## TERRITORY OF HAWAII *v.* KIMURA.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED MARCH 9, 1904.        DECIDED MARCH 26, 1904.

FREAR, C.J., GALBRAITH AND PERRY, JJ.

An exception to the verdict of a jury, in a criminal case, on the ground that it is contrary to the law and the evidence and against the weight of the evidence and one to an order denying a motion for a new trial based on the same ground are overruled, the verdict being found to be not contrary to the law and the evidence and not against the weight of the evidence.

### OPINION OF THE COURT BY GALBRAITH, J.

The defendant is charged, by indictment, with the murder of one Kane Yamanaka, a Japanese woman, in the District of Waialua, Island of Oahu, Territory of Hawaii, on the 18th day of May, 1902. The jury returned a verdict of guilty of murder in the first degree and the Court sentenced him to be hanged by the neck until dead. The cause is brought to this Court by bill of exceptions.

There are only three exceptions set out in the bill. The first one was taken to the ruling of the court on an objection to a question on the ground that it was leading. The question asked a witness for the prosecution was, "Were you or were you not present when the doctor examined the body"? A. "I was not present." This exception is not well taken. In view of the answer the question was clearly immaterial and the exception seems to be frivolous.

The other exceptions present the same question in different

form. The objection was that the verdict was contrary to the law and the evidence and against the weight of the evidence. This question was urged first against the verdict and second as grounds for a motion for a new trial. The objection was overruled in each form. The consideration of these exceptions requires an examination of the evidence.

It appears from the evidence that the deceased for about a year prior to her death had been living with Yamanaka, a Japanese store-keeper, at Waialua, as his wife without having been married according to the laws of the Territory, although she had taken his name and that the defendant was in the employ of Yamanaka and had been in his service for a year past; that the 18th day of May, 1902, occurred on Sunday, and that the deceased and defendant, at about 2 o'clock in the afternoon drove away from Yamanaka's store in a one-horse cart, the former responding to an invitation of a neighbor, residing a few miles away, to attend a child's birthday party and the defendant was sent along as driver. The defendant while at the party imbibed rather freely of saki and became somewhat intoxicated. When ready to start home the deceased asked the defendant to permit Saito, whom she had met at the luau, to ride with them in the cart. The defendant refused, saying that three persons could not ride in the cart, whereupon the deceased declared that she would not ride but would walk with Saito and started off with him. The defendant drove on alone in the cart for a time and then waited for the deceased and Saito to come up to him, when he again insisted that the deceased should ride with him and when she refused he forced her into the cart and the two drove away in the direction of Yamanaka's. Fujikawa whose house is on the public road about one mile from Yamanaka's and between there and the place where the defendant compelled the deceased to get into the cart, testified that he heard loud talking in the road in front of his place about 9 o'clock p. m. and went to the door and saw the deceased and the defendant passing in the cart; that a few minutes later he heard the deceased cry out "help", "come and help"——and starting to go to her assistance

he heard a louder cry for help from the deceased, but was unable to catch up with the cart although he came near enough to recognize the deceased and the defendant in the cart; that he later secured a horse and pursued the cart and overtook it one half mile from Yamanaka's house and when he came up with it the defendant and the deceased were sitting up in the cart, the former holding the lines in his right hand and his left arm extended around the deceased, who was leaning on the defendant and when asked what the trouble was she made no reply but the defendant said the horse had been unmanageable. When the witness reminded the defendant that he was an experienced driver no reply was made. The witness then rode on to Yamanaka's and returned in a short time and met the driverless horse in the road and found the body of Kane Yamanaka doubled up in the cart. This was near ten o'clock at night. A doctor was called who upon examination pronounced her dead. The doctor testified at the trial that there was a deep cut across the throat of the deceased extending from ear to ear and that this was sufficient to cause death; that the wound was made with a sharp-edged instrument and was made by a strong thrust and could not have been self-inflicted.

The defendant was taken into custody a short time afterwards and the deputy sheriff who made the arrest said that the defendant was under the influence of liquor when arrested; that he asked the defendant "Why did you kill Yamanaka's wife?" and he said "I no care wahine no pololei, he and that wahine Yamanaka been before and today she ran away with a Japanese named Saito so he got mad and that is why he killed her." The defendant also gave the officer a blood-stained paper in his own hand-writing presumably the joint will of the deceased and the defendant in which the defendant admits the killing. The defendant had a gun when arrested and also had a cut on the neck that was probably made with a sharp-edged instrument.

The defendant being the only witness who testified in his behalf said in explanation of the death of the woman: "I and

the woman, two of us rode back in the wagon. On our way home she suggested to me that we could no longer live, and don't you think it is a good proposition for us to die now to-night. I told her that I would not die,—I don't like to die because I wanted to live for another two or three years. And she got out a knife and after whirling it around cut me on the hand. After I was cut here on the left hand I grabbed hold of the rein and then at that very instant I was bitten in the shoulder by her and at the point on the road leading to number three and about fifty feet away from that point we died." * * * "What I mean by 'we died' is this, that she cut herself in the neck and I cut myself in the neck." * * "We were at that time on the wagon after she had stabbed herself in the wagon and after I had stabbed myself on the wagon I fell on the side of the wagon unconscious. I searched around for the knife with which I stabbed my neck attempting to make a second blow, a second stab, but the knife could not be found. I failing to find the knife went back to my own home where I found my gun and intended to commit suicide by shooting myself." * * * The defendant denied that he admitted to the officer, the night of arrest, that he had killed the deceased and also that he had written the "will" or written confession, given to the officer and admitted in evidence. This is virtually all of the evidence offered by the defendant.

In view of the confession and admissions and the uncontradicted testimony of the doctor to the effect that the wound on the deceased could not have been self-inflicted the theory of suicide is entitled to little if any credence. In the light of the evidence we cannot say that the verdict of the jury is contrary to the law or that it is against the evidence and the weight of the evidence. On the contrary the evidence amply supports the verdict.

There may be features of this case that will appeal to executive clemency and constrain the Governor to commute the extreme penalty prescribed by the law for the crime of which the defendant was convicted, to one of a lesser degree but this

court in passing upon the exceptions presented cannot give effect to such considerations. The defendant appears to have had a fair and impartial trial. The evidence supports the verdict and the statute prescribes the penalty. The exceptions must be overruled. It is so ordered.

*M. F. Prosser, Deputy Attorney General,* for the Territory. No brief for defendant.