## TERRITORY *v.* LOUIS LAKE.

### No. 1423.

EXCEPTIONS FROM CIRCUIT COURT SECOND CIRCUIT.
HON. L. L. BURR, JUDGE.

SUBMITTED NOVEMBER 9, 1922.                    DECIDED JANUARY 29, 1923.

PETERS, C. J., PERRY AND LINDSAY, JJ.

APPEAL AND ERROR—*instructions to juries.*

The giving of an instruction which, though somewhat ambiguous, is not calculated to mislead the jury, is not reversible error, the court having given other instructions fully explaining the nature of the offense with which defendant was charged.

SAME—*instruction—ambiguous.*

Even though an instruction is somewhat ambiguous, the mere saving of an exception to it without request for further instructions, presents no error on appeal.

EVIDENCE.

The evidence in this case held sufficient to support the verdict.

STATUTES—*indeterminate sentences.*

In sentencing a person convicted of a felony for which no minimum sentence is prescribed by law, the provisions of section 3843, R. L. 1915, are mandatory and in imposing sentence the court is required to fix a minimum sentence.

SAME.

A sentence that a defendant convicted of the crime of manslaughter in the third degree be imprisoned for the term of not less than five years nor more than five years is not in compliance with the provisions of section 3843, R. L. 1915, requiring the court in such cases to fix a minimum sentence.

#### OPINION OF THE COURT BY LINDSAY, J.

The defendant was tried in the second circuit upon an indictment charging that he, on the 10th day of December, 1921, did feloniously kill and slay one H. T. White, by assaulting, beating and inflicting corporal injuries

on the said White from which injuries and wounds said White died on the 12th day of December, 1921. The jury returned a verdict finding defendant guilty of manslaughter in the third degree and the court sentenced defendant to imprisonment at hard labor for a term of not less than five years, nor more than five years and to pay costs of court.

The case comes here upon exceptions, the three exceptions relied on being: 1. (Exception No. 20) That the court erred in giving prosecution's requested instruction No. 4 as follows: "The court instructed the jury that if they believe from the evidence that the defendant killed the deceased named in the indictment in the commission of an unlawful act or in the performance of a lawful act in an unlawful manner, and that the said act was the proximate cause of the said killing, and that the said act was done without malice, without means or intention calculated to produce death it would be manslaughter;" 2. (Exception No. 26) that the court erred in denying defendant's motion for a new trial and more particularly upon the ground that the verdict is contrary to the evidence and against the weight of the evidence and that the evidence introduced is insufficient to support the verdict; 3. (Exception No. 27) that the court erred in sentencing defendant to imprisonment at hard labor for a term of not less than five years nor more than five years.

As to the first exception—defendant contends that the instruction given was incorrect because it did not come within the charge of the indictment, in that the indictment charged Lake, not with manslaughter resulting from any unlawful act, but from a specific act, to wit, beating and assaulting White. In support of this contention defendant cites the case of *Territory* v. *Cabrinha,* 24 Haw. 757, holding that "an instruction which authorizes the jury

to convict without having found that the crime was committed by the defendant in the manner alleged in the indictment is prejudicial error."

Standing alone this instruction might be somewhat ambiguous but, in the light of all the instructions given, the instruction by no means intimated to the jury that it was authorized to convict defendant without having found that the crime was committed by defendant in the manner alleged in the indictment. After defining the crime of manslaughter in the language of the statute, the court instructed the jury that "if you believe from the evidence  *  *  *, beyond a reasonable doubt  *  *  *, that the defendant at or about the time and place named in the indictment did unlawfully and feloniously kill and slay a human being, to wit, one H. T. White, by assaulting, beating and inflicting corporal injuries upon the said H. T. White from which injuries and wounds, the said H. T. White died on or about the date alleged in the indictment, then you will find the defendant guilty as charged." The court also instructed the jury that defendant was presumed to be innocent until his guilt was proven beyond a reasonable doubt and explained to the jury the meaning of a reasonable doubt. The instruction complained of, taken with the other instructions given, could not have misled the jury and did not constitute prejudicial error. Furthermore, it does not appear that defendant requested the trial court to give further instructions to the jury regarding the nature of the offense charged, and, as this court has held in *Territory* v. *Furomori,* 20 Haw. 344, "even though an instruction is ambiguous and misleading, the mere saving of an exception to it without request for further instructions, presents no error on appeal." This exception is overruled.

The next exception is that the court erred in denying defendant's motion for a new trial, and more particularly

upon the ground that the verdict is contrary to the evidence and against the weight of the evidence and that the evidence introduced is insufficient to support the verdict.

The sole question presented under this exception is whether there was sufficient evidence to support the verdict, for the verdict of a jury will not be set aside where there is evidence to support it (*Territory* v. *Kimura,* 15 Haw. 510) ; nor will a verdict be set aside merely because the court might upon the evidence have arrived at a different conclusion from the one reached by the jury. (*Kaaihue* v. *Crabbe,* 3 Haw. 768; *Territory* v. *Soga,* 20 Haw. 71.)

The evidence upon which the verdict was predicated was such that the jury might, as it did, have found defendant guilty of either manslaughter in the third degree, or, as instructed by the trial court, merely of an assault and battery, or have even acquitted the defendant. The gist of the evidence was that on the night of December 10, 1921, deceased together with defendant and others was riding about for several hours in an automobile during which time they called at several houses and partook of considerable intoxicating liquors. All of the party were more or less intoxicated, the deceased apparently more so than the others. In one of the houses visited, deceased fell to the floor but, so far as is disclosed by the evidence, was uninjured. About midnight the party arrived at the wharf at Kahului, near which was moored the boat of whose crew deceased was a member. Deceased got out of the car and, on the driver's demand for the fare, asserted that he had been robbed. Defendant got out and hit deceased, and deceased fell to the ground. There is evidence to the effect that deceased either got up, or attempted to get up, whereupon defendant again hit him and deceased again fell. This is disputed but there is ample evidence to show that de-

fendant hit deceased at least once and that deceased fell backward to the ground. Deceased was then either left where he had fallen or was pulled aside a short distance to a fence and left there. Defendant with his companions then left for their several homes. Two or three hours later, some of the shipmates of deceased returning to their ship found deceased lying near the roadside and picked him up. His eye was black and his jaw was swollen. There was dried blood on the side of his face that looked as if it had come from his ears. Deceased was either carried or supported by his mates to a short distance and laid upon a pile of iron pipes. A night watchman on duty near by testified that deceased fell upon these pipes, but that is denied by another witness. Deceased was taken on board his ship and appears to have remained in a semiconscious state all night. In the morning a doctor was called and deceased was removed to the hospital at Puunene. An operation was performed but deceased died early the following morning, never having recovered total consciousness.

The doctor testified, on direct, that the death was due to a fracture of the skull and hemorrhage of the brain. On cross-examination the doctor was asked whether in his opinion he would say "the injuries you found on this man were caused by a blow of either the fist or forearm of a man of the build of Lake?" A. "I don't believe a blow itself would cause a fracture like that, no sir." The doctor also testified that the skull of deceased was thicker than the usual skull. Counsel for defendant asked the doctor: "But, really, as a matter of fact, Doctor, it would be impossible for a man of the build of the Defendant, Lake, * * * to inflict that injury by reason of a blow with either his bare fist or forearm—would it not?" A. "I don't think that would fracture his skull. It is my opinion the blow with the fist would not fracture

the skull." Q. "Wouldn't you be willing to swear, Doctor, that a blow of the fist could not induce that injury?" A. "No Sir." Q. "You think it is possible that a blow of the fist could induce that injury?" A. "I have never seen a fracture which came from a blow. When a man would receive a blow like that he would fall and you couldn't tell whether it was receiving the blow or striking some solid object in falling." Q. "Do you think, Doctor, that the injury could be occasioned by the deceased falling on a curb or on iron pipes?" A. "After a blow—probably; just by an ordinary fall—by walking and falling—I don't think so. If he were knocked down it is possible." On redirect the doctor was asked: "Doctor, could the injuries to this man White have been caused by being struck with a fist thus falling and striking a pavement?" A. "I think it could, yes sir; although, on examination of the man and his skull and everything, I would think it would take a harder blow than that to fracture his skull." Counsel for defendant asked the doctor: "Do you believe then, Doctor, in other words, that this fracture was caused by a blow other than a fall?" A. "Other than from falling of his own accord?— Yes." Q. "Do you believe he was struck with some blunt instrument?" A. "I have no reason to form an opinion except from an examination of the man and from the injuries. It seems to me that he had been hit with something harder than a fist and something harder than a fall." Q. "In other words, you believe that he was struck with some blunt instrument?" A. "That is my opinion." The doctor further testified that there were no abrasions or lacerations on the skin of deceased except one on the lip, but that a blow with a solid object through a hat or like that would not necessarily have broken the skin— that if deceased had a hat on and were struck with a

blunt instrument wrapped in a towel or anything like that there might be no abrasion of the skin.

One of the men who found deceased, on being questioned as to whether, when he found deceased the hat of deceased was there, answered, "Not that I noticed."

If the jury had by its verdict declared that it was not satisfied beyond a reasonable doubt that the defendant's blow was the cause of death the verdict would have found support in the testimony; on the other hand the jury having said that it was satisfied beyond a reasonable -doubt that the blow was the cause of death, upon the state of the evidence that finding cannot be set aside by us.

The remaining exception is to the sentence imposed by the court.

Section 3867, R. L. 1915, provides that manslaughter in the third degree shall be punishable by imprisonment at hard labor for not more than five years, or by a fine not more than $1000, in the discretion of the court. In this case the sentence of the trial court was that defendant be imprisoned at hard labor "for a term of not less than five years nor more than five years" which sentence, it is asserted, is in conflict with the provisions of law relating to indeterminate sentences.

Section 3843, R. L. 1915, provides that upon the conviction of a person of a felony of this character, the court, in imposing sentence, shall not fix the limit or duration of sentence, but the term of imprisonment imposed shall not exceed the maximum nor be less than the minimum term prescribed by law for the crime of which the person was convicted. In all cases in which no minimum sentence is prescribed by law the court imposing sentence shall fix such minimum sentence, which minimum shall not be more than five years.

The release on parole of prisoners is provided for by

Act 103, S. L. 1917, under which paroles may be granted at any time after the prisoner shall have served the minimum sentence imposed by the court. Whether a prisoner shall or shall not be compelled to serve out the maximum of his term depends to a large extent upon the conduct of the prisoner himself. The aim of the act is obviously to impress the prisoner with the fact that, while the law punishes those convicted of crime, such punishment is not inflicted in a spirit of vindictiveness, but in the hope that the erring one may mend his ways. To that end, therefore, it is provided that, if it shall appear to the warden of the territorial prison and prison inspectors that there is a strong and reasonable probability that the prisoner will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society, a recommendation to that effect may be made to the governor who, in his discretion, may allow the release of the prisoner upon parole, subject, however, to being taken back to jail for infraction of the rules and regulations relating to his parole. The act gives further encouragement to the paroled prisoner by holding out to him the prospect of a complete discharge from his prison sentence if, after serving not less than one year of his parole, he has given evidence that he will remain at liberty without violating the law.

The intention of the legislature to mitigate the harshness of prison sentences and to hold out to prisoners a hope of securing, by good conduct, a remission of a portion of the sentence, being clear, it is mandatory upon the court to enforce the indeterminate sentence law according to its spirit, and, in imposing sentences in cases of this nature, it is the duty of the trial court to fix a minimum as well as a maximum sentence and, while we are not to be considered as in any wise attempting to control the legal discretion of trial judges, a reasonable

period of time should intervene between such minimum and maximum sentences.

"It is not to the purpose to say that the provision does not prohibit the fixing of the minimum and maximum so that both will expire on the same date, because they may, in the nature of things, approach each other until the difference disappears.  This view is not in accord with the spirit of the provision, and would defeat effectually the purpose had in view by the legislature.  It is entirely clear that * * * the court * * * in pronouncing the judgment, ignored the spirit and purpose of the provision, with the result that the term of service imposed upon the complainant is as definite as if the jury had said, 'we, the jury, find the defendant guilty' etc., and fixed his punishment at confinement in the state prison for a term of two years." *Ex parte Collins,* 152 Pac. 40.

In the present case there being no minimum sentence prescribed by law for the crime of manslaughter in the third degree, it became the duty of the trial judge to exercise the discretion vested in him and to fix a minimum sentence.  The failure of the trial judge to exercise such discretion and to fix a proper minimum sentence was therefore error.

The record shows that immediately after the imposition of sentence upon defendant, counsel for defendant noted an exception to the sentence.  The exception was general and stated no grounds for the same.

Ordinarily an appellate court will not consider a general exception to a sentence which states no ground for the exception, for an opportunity should be given to the trial court to correct an alleged error.  (*Territory* v. *Masagi,* 16 Haw. 196, 227.)  In this case, however, having held that, except for the erroneous sentence imposed, the proceedings were otherwise regular, free from prejudicial error and the verdict authorized by the evidence, we are of the opinion that although the question has not been properly raised it is our duty to consider it.

In *Territory* v. *Savidge,* 14 Haw. 286, where an invalid sentence had been imposed, although no exception to such sentence had been noted, this court of its own motion remanded the case to the lower court for the imposition of a legal sentence; and the Supreme Court of the United States has held that although the question was not properly raised "yet if a plain error was committed in a matter so absolutely vital to defendants, we feel ourselves at liberty to correct it." *Wiborg* v. *United States,* 163 U. S. 632, 658. See also *Clyatt* v. *United States,* 197 U. S. 207, 221.

The sentence against the defendant herein is set aside and the case is remanded to the circuit court with instructions to impose upon defendant a sentence in accordance with the provisions of Section 3843, R. L. 1915.

*E. R. Bevins,* County Attorney of Maui, and *Wendell F. Crockett,* Deputy County Attorney of Maui, for the Territory.

*W. B. Lymer* and *Marguerite K. Ashford* for defendant.