35 P.3d 210

Gregory K. WILLIAMSON, Respondent–Petitioner–Appellant,

v.

HAWAI'I PAROLING AUTHORITY, Petitioner–Respondent–Appellee.

No. 22882.

Supreme Court of Hawai'i.

Nov. 29, 2001.

Lisa M. Itomura, Deputy Attorney General, for petitioner-respondent-appellee on the writ.

Theodore Y.H. Chinn, Deputy Public Defender, for amicus curiae the Office of the Public Defender.

Opinion of the Court by NAKAYAMA, J.

Petitioner-respondent-appellee Hawai'i Paroling Authority (HPA) applies to this court for a writ of certiorari to review the opinion of the Intermediate Court of Appeals (ICA) in *Williamson v. Hawai'i Paroling Authority,* 97 Hawai'i 156, 34 P.3d 1055 (Ct. App.2000) [hereinafter, the "ICA's opinion"],[1] vacating the circuit court's judgment dismissing the Hawai'i Rules of Penal Procedure (HRPP) Rule 40 petition of respondent-petitioner-appellant Gregory Williamson. In its application for certiorari, the HPA argues that the ICA erred when it held that a prisoner has a statutory right to a minimum term of imprisonment that is shorter than the maximum possible sentence. We hold that neither Chapter 706 nor Chapter 353 of · the Hawai'i Revised Statutes (HRS) prohibit the HPA from setting a prisoner's minimum term at a period equal to his or her maximum sentence. Therefore, we reverse the ICA's opinion.

## I. BACKGROUND

### A. Factual and procedural background

Williamson was convicted of one count of assault in the second degree, in violation of HRS § 707–711 (1993), and one count of burglary in the second degree, in violation of HRS § 708–811 (1993). On January 12, 1998, Williamson was sentenced to two concurrent terms of five years' imprisonment. After a hearing pursuant to HRS § 706–669

---

1. The ICA amended its opinion on November 30, 2000. All references to the ICA's opinion refer to the opinion as amended.

(1993 & Supp.1998), the HPA set Williamson's minimum terms at five years.

On November 24, 1998, Williamson filed an HRPP Rule 40 petition for post-conviction relief. In his petition, Williamson argued that the HPA violated his "right to be eligible for parole" under HRS § 706–669 by setting his minimum term at the same length of time as his maximum sentence. However, on February 3, 1999, the circuit court ruled that Williamson's petition did not "raise issues of illegality of judgment as described in HRPP Rule 40(a)(1) or illegality of restraint or custody described in HRPP Rule 40(a)(2)" [2] and ordered that Williamson's petition be forwarded to the court clerk to be processed as a civil complaint pursuant to HRPP Rule 40(c)(3). [3]

The HPA was served with a summons on February 8, 1999 that required it to answer the petition within thirty days. Instead of filing an answer, on February 22, 1999, the HPA filed a motion to dismiss the petition, arguing that it was immune to Williamson's claims. On March 4, 1999, Williamson filed a motion to strike the HPA's motion to dismiss, arguing that the HPA's motion raised "insufficient defenses" and contained "immaterial, impertinent, and/or scandalous matter." The circuit court denied Williamson's motion to strike and granted the HPA's motion to dismiss on July 2, 1999. A "judgment in a civil case" was entered in the HPA's favor on September 20, 1999. Williamson timely appealed.

## B. The ICA's opinion

On appeal, Williamson argued that the circuit court erred in ordering that his HRPP Rule 40 petition be processed as a civil complaint and in granting the HPA's motion to dismiss the petition. Williamson argued that he had alleged illegal restraint or custody based on the HPA setting his minimum term in violation of his right to be eligible for parole under HRS § 706–669(1) (1993) and that, because the HPA violated his statutory "right to be eligible for parole," the court should not have dismissed his petition.

The ICA issued a published opinion on November 22, 2000. Relying on *Turner v. Hawai'i Paroling Authority*, 93 Hawai'i 298, 1 P.3d 768 (App.2000) (holding that an HRPP petition is the appropriate means to challenge an HPA decision denying parole), the ICA held that "[an HRPP] Rule 40 petition is an appropriate means for an inmate to challenge the minimum term of imprisonment set by the HPA."

The ICA further held that the circuit court erred in granting the HPA's motion to dismiss because every inmate who is not sentenced to life imprisonment without the possibility of parole has a statutory right to have his or her minimum term set at a period less than his or her maximum sentence. The ICA stated that:

> [HRS § ] 706–669 states a prisoner *shall* become eligible for parole after serving his minimum term of imprisonment. [HRS § ] 706–670(1) . . . states a "person sentenced to an indeterminate term of impris-

2. HRPP Rule 40(a) states in pertinent part:
 The post-conviction proceeding established by this rule shall encompass all common law and statutory procedures for the same purpose, including habeas corpus and coram nobis; provided that the foregoing shall not be construed to limit the availability of remedies in the trial court or on direct appeal. Said proceeding shall be applicable to judgments of conviction and to custody based on judgments of conviction, as follows:
 . . . .
 (2) From custody. Any person may seek relief under the procedure set forth in this rule from custody based upon a judgment of conviction, on the following grounds:
 (i) that sentence was fully served;
 (ii) that parole or probation was unlawfully revoked; or
 (iii) any other ground making the custody, though not the judgment, illegal.

3. HRPP Rule 40(c)(3) states:
 If a post-conviction petition alleges neither illegality of judgment nor illegality of post-conviction "custody" or "restraint" but instead alleges a cause of action based on a civil rights statute or other separate cause of action, the court shall treat the pleading as a civil complaint not governed by this rule. However, where a petition seeks relief of the nature provided by this rule and simultaneously pleads a separate claim or claims under a civil rights statute or other separate cause of action, the latter claim or claims shall be ordered transferred by the court for disposition under the civil rules.

onment *shall receive an initial parole hearing* at least one month before the expiration of the minimum term of imprisonment." [HRS § ] 353–62(a)(2) directs the HPA to consider for parole *all committed persons,* except in cases where the penalty of life imprisonment without parole has been imposed.... And finally, [HRS] § 353–64 provides that *any committed person* except those sentenced to life imprisonment without parole "*shall be subject to parole.*" ICA's opinion at 159–60, 34 P.3d at 1058–59. The ICA stated that "[t]ogether these statutory provisions make it clear that every inmate sentenced to an indeterminate sentence is entitled to a parole hearing." *Id.* at 159, 34 P.3d at 1058. The ICA further held that:

> By setting the same minimum term of imprisonment as the maximum term of imprisonment, the HPA has denied Williamson a meaningful parole hearing before his minimum sentences expire. Under HRS § 706–670(1), Williamson would still be entitled to a parole hearing at least one month before his minimum sentence expires, but he could not be placed on parole unless the HPA reduced his minimum terms of imprisonment. Section 706–669(5) (Supp.1999) states that the HPA in its discretion may reduce the minimum term of imprisonment. Section 706–669(5) does not contemplate minimum terms being the same as maximum terms because the HPA would then have *no* discretion but to reduce a minimum term of imprisonment to allow an inmate to have a meaningful parole hearing.

*Id.* at 160, 34 P.3d at 1059 (emphasis in original). Finally, the ICA held that "[a] 'reasonable period of time should intervene between such minimum and maximum sentences.'" *Id.* at 160, 34 P.3d at 1059 (quoting *Territory v. Lake,* 26 Haw. 764, 771–72 (1923)).

Based on these principles, the ICA vacated the circuit court's judgment and remanded the case to the circuit court with instructions to grant Williamson's HRPP Rule 40 petition and to direct the HPA to reduce Williamson's minimum term such that there would be a reasonable period of time between his minimum and maximum terms. *Id.* at 160, 34 P.3d at 1059.

The HPA filed a timely application for a writ of certiorari on December 22, 2000.[4] In its application, the HPA argued that, based on the legislative history of HRS § 706–669 and the Hawai'i Penal Code, the ICA erred in holding that prisoners are entitled, as a *per se* matter, to minimum terms that are shorter than their maximum sentences.

## II. DISCUSSION

### A. Standard of review

Whether the HPA has the authority to set a prisoner's minimum term of imprisonment at a period equal to his or her maximum sentence is a question of statutory interpretation.

> "[T]he interpretation of a statute ... is a question of law reviewable de novo." ... *[State v.] Arceo,* 84 Hawai'i 1,] 10, 928 P.2d [843,] 852 [ (1996) ] ... (quoting *State v. Camara,* 81 Hawai'i 324, 329, 916 P.2d 1225, 1230 (1996) (citations omitted)). *See also State v. Toyomura,* 80 Hawai'i 8, 18, 904 P.2d 893, 903 (1995); *State v. Higa,* 79 Hawai'i 1, 3, 897 P.2d 928, 930, ... (1995); *State v. Nakata,* 76 Hawai'i 360, 365, 878 P.2d 699, 704, ... (1994)....

*Gray v. Administrative Director of the Court,* 84 Hawai'i 138, 144, 931 P.2d 580, 586 (1997) (some brackets added and some in original). *See also State v. Soto,* 84 Hawai'i 229, 236, 933 P.2d 66, 73 (1997). Furthermore, our statutory construction is guided by established rules:

> When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which

---

4. The Office of the Public Defender (OPD) filed an amended brief of amicus curiae (ABAC) on January 19, 2001. OPD admitted that there is no express statutory provision prohibiting the HPA from setting minimum terms that are the same as prisoners' maximum sentences. ABAC at 2. However, OPD argued that there is an ambiguity as to whether the HPA has the authority to set minimum terms in this manner. *Id.* It argued that the ICA was correct in its resolution of this ambiguity, based upon the legislative history of the relevant statutes and the case law regarding indeterminate sentencing. *Id.* at 2–3.

is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. . . .

In construing an ambiguous statute, "[t]he meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning." HRS § 1–15(1) [ (1993) ]. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.

*Gray,* 84 Hawai'i at 148, 931 P.2d at 590 (quoting . . . *Toyomura,* 80 Hawai'i at] 18–19, 904 P.2d [at] 903–04 . . . ) (brackets and ellipsis points in original) (footnote omitted). This court may also consider "[t]he reason and spirit of the law, and the cause which induced the legislature to enact it . . . to discover its true meaning." HRS § 1–15(2) (1993). "Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another." HRS § 1–16 (1993).

*State v. Valentine,* 93 Hawai'i 199, 204–05, 998 P.2d 479, 484–85 (2000) (quoting *State v. Kotis,* 91 Hawai'i 319, 327, 984 P.2d 78, 86 (1999)) (some citations omitted) (some alterations in original).

**B. Neither the plain language nor the legislative history of HRS Chapters 353 and 706 prohibits the HPA from setting a prisoner's minimum term of imprisonment at a period equal to his or her maximum sentence.**

At the outset, we note that the legislature created the HPA to be the "central paroling authority for the State." HRS § 353–62(1) (1993). Pursuant to HRS § 706–669, the HPA is charged with determining the minimum term of imprisonment a prisoner must serve before being eligible for parole.[5] The guidelines upon which these determinations are made are established by the HPA. HRS § 706–669(8) (1993). The legislature did not expressly provide a means to appeal HPA parole decisions.[6] The legislature apparently intended to grant the HPA broad discretion in establishing minimum terms. As noted in the Commentary on HRS § 706–669, the HPA has the "exclusive authority to determine the minimum time which must be served before the prisoner will be eligible for parole." Further, there is no evidence in the legislative history of HRS § 706–669 (1993 & Supp.2000) that indicates that the legislature intended to prohibit the HPA from setting a prisoner's minimum term at a period equal to his or her maximum sentence.[7] We read the relevant stat-

5. HRS § 706–669 provides in pertinent part:
 (1) When a person has been sentenced to an indeterminate or an extended term of imprisonment, the Hawaii paroling authority shall, as soon as practicable but no later than six months after commitment to the custody of the director of the department of [public safety] hold a hearing, and on the basis of the hearing make an order fixing the minimum term of imprisonment to be served before the prisoner shall become eligible for parole.
 (2) Before holding the hearing, the authority shall obtain a complete report regarding the prisoner's life before entering the institution and a full report of the prisoner's progress in the institution. The report shall be ·a complete personality evaluation for the purpose of determining the prisoner's degree of propensity toward criminal activity.
 . . .

(8) The authority shall establish guidelines for the uniform determination of minimum sentences which shall take into account both the nature and degree of the offense of the prisoner and the prisoner's criminal history and character. The guidelines shall be public records and shall be made available to the prisoner and to the prosecuting attorney and other interested government agencies.
(Brackets in original.)

6. However, under *Turner,* HPA decisions are subject to limited judicial review. *See* discussion *infra* section II.C.

7. HRS § 706–669 was adopted in 1972, when the legislature enacted the Hawai'i Penal Code, which was derived from the Model Penal Code (MPC). *See* 1972 Haw. Sess. L. Act 9, § 1 at 82–83; Conf. Comm. Rep. No. 1, in 1972 Senate

utes in this case with these principles in mind.

The ICA held that, when HRS §§ 353–62, 353–64, 706–669, and 706–770 are read in *pari materia*, they create a statutory right of every prisoner, who is not sentenced to life imprisonment without the possibility of parole, to be considered for parole in periodic parole hearings. We disagree with this reading of Chapters 353 and 706. The relevant sections can be reconciled without limiting the HPA's authority in this manner.

### 1. HRS Chapter 353

■■ HRS § 353–62 (1993) describes the responsibilities and duties of the HPA. It states, in relevant part:

(a) *In addition to any other responsibility or duty prescribed by law* for the Hawaii paroling authority, the paroling authority shall:

(1) Serve as the central paroling authority for the State;

(2) In selecting individuals for parole, *consider for parole all committed persons*, except in cases where the penalty of life imprisonment not subject to parole has been imposed, regardless of the nature of the offense committed;

(3) Determine the time at which parole shall be granted to *any eligible individual* as that time at which maximum benefits of the correctional institutions to the individual have been reached and the element of risk to the community is minimal[.]

(Emphases added.) [8] There is no reference to the establishment of minimum terms in this section. Thus, the conduct of hearings on the establishment of minimum terms and the actual establishment of minimum terms are responsibilities and duties prescribed by

---

Journal, at 734. The legislative history does not address the issue presented in this case. *See* Conf. Comm. Rep. No. 1, in 1972 Senate Journal, at 734; Conf. Comm. Rep. No. 2, in 1972 Senate Journal, at 742–43; Sen. Stand. Comm. Rep. No. 599, in 1971 Senate Journal, at 1074; Hse. Stand. Comm. Rep. No. 227, in 1971 House Journal, at 785. Neither do the subsequent amendments to HRS § 706–669 address this issue. *See* 1976 Haw. Sess. L. Act 92, § 8 at 148–49; 1988 Haw. Sess. L. Act 282, § 1 at 526–27; 1996 Haw. Sess. L. Act 4, § 1 at 5, Act 193, § 1 at 445–46.

The ICA's opinion states that the Commentary to HRS § 706–669 indicates that the section "contemplates sentenced felons having the opportunity to be paroled, except for felons sentenced to life without the possibility of parole for murder." ICA's opinion at 158, 34 P.3d at 1057 n. 2; *see also* Dissent at 200–01, 35 P.3d at 227–28. Therefore, under this view, every prisoner, who is not sentenced to life imprisonment without the possibility of parole, is eligible for parole. We do not agree that the commentary to section 706–669 supports this proposition.

At the time the 706–669 Commentary was drafted, HRS § 706–606(a) enumerated the circumstances giving rise to the offense of murder in the first degree, which is subject to a mandatory sentence of life imprisonment without the possibility of parole. The comparable statute in the current version of the HRS is section 707–701(1). *Compare* HRS § 706–606(a) (Supp. 1972) *with* HRS § 707–701(1)(b) through (e) (1993). However, where the prisoner has been convicted of murder in the first degree, the *sentencing court* imposes a sentence of life without the possibility of parole. This is distinguishable from cases in which the *HPA* establishes a man-

datory minimum term that renders the prisoner ineligible for parole. Where the sentencing court imposes a sentence of life imprisonment without the possibility of parole, the HPA does not have any discretion to take action with regard to the prisoner's parole status.

Similarly, we also reject the argument of amicus curiae OPD that *Territory v. Lake*, 26 Haw. 764 (1923), addressed "the exact issue presented in the instant case[.]" ABAC at 5. *Lake* and the other cases cited by OPD pre-date the Hawai'i Penal Code and were decided under sentencing and parole schemes that were markedly different from those presently in force.

8. The bill adopting these provisions was introduced in 1975 and enacted in 1976. *See* 1975 Senate Journal at 23; 1976 Haw. Sess. L. Act 92, § 3 at 146. The purpose of the bill was "to reconstitute the board of paroles and pardons in order to more effectively and efficiently achieve the dual and inseparable purposes of parole, the protection of society on the one hand and the rehabilitation of the offender on the other." Conf. Comm. Rep. No. 32–76, in 1976 Senate Journal, at 882. There is nothing in the legislative history indicating that, in adopting these provisions, the legislature intended to confer the right to periodic parole hearings upon all prisoners not sentenced to life imprisonment without the possibility of parole. *See id.;* Sen. Stand. Comm. Rep. No. 314, in 1975 Senate Journal, at 959–60; Hse. Stand. Comm. Rep. No. 695, in 1975 House Journal, at 1280. Neither is this issue addressed in the subsequent amendments to the statute. *See* 1987 Haw. Sess. L. Act 338, § 5 at 1108; 1988 Haw. Sess. L. Act 141, § 33 at 226–27.

law *in addition to* those set out in HRS § 353–62. They are not governed by the general terms of HRS § 353–62. HRS § 706–669 is the sole statute governing the establishment of minimum terms, and it does not prohibit the HPA from setting a prisoner's minimum term at a period equal to his or her maximum sentence.

Further, allowing the HPA to set a prisoner's minimum term at a period equal to his or her maximum sentence is consistent with the terms of HRS § 353–62(a)(2) and (3) (1993). Subsection (a)(2) provides that the HPA shall "consider for parole" all persons, except those sentenced to life imprisonment without the possibility of parole. The establishment of a minimum term is part of the parole process and, in establishing the minimum, the HPA looks at a variety of factors including the prisoner's characteristics and the nature of the underlying offense. *See State v. Bernades,* 71 Haw. 485, 490, 795 P.2d 842, 845 (1990); HRS § 706–669(8) (1993). Thus, even where the HPA renders a prisoner effectively ineligible for parole by setting his minimum term at a period equal to his maximum sentence, the prisoner has been "considered for parole."

Subsection (a)(3) refers to the determination of the time when parole is to be granted to "any *eligible* individual." (Emphasis added.) Because the statute refers to eligible individuals, we believe that the legislature contemplated that some individuals may be rendered "ineligible" for parole by virtue of the prior "consideration" given them. Further, subsection (a)(3) utilizes different language than subsection (a)(2), which refers to "all committed persons, except in cases where the penalty of life imprisonment not subject to parole has been imposed[.]" This implies that the class of persons who are ineligible for parole is different from the class of persons who were sentenced to life imprisonment without the possibility of parole. Thus, HRS § 353–62, while requiring the HPA to "consider for parole" all prisoners not sentenced to life imprisonment without the possibility of parole, does not prohibit the HPA from rendering a prisoner "ineligible" for parole by setting his or her minimum term at a period equal to his or her maximum sentence.

The ICA's opinion also relies upon HRS § 353–64 (1993), which states, in pertinent part: "Any committed person ..., except in cases where the penalty of life imprisonment not subject to parole has been imposed, shall be *subject to parole* in manner and form as set forth in this part[.]" [9] (Emphasis added.) As discussed *supra*, the establishment of a minimum term of imprisonment is part of the parole process. Therefore, a prisoner who, after the appropriate hearing, has his or her minimum term set at a period equal to his or her maximum sentence has been "subject to parole." HRS § 353–64 does not prohibit the HPA from setting a prisoner's minimum term at a period equal to his or her maximum sentence.

Further, assuming *arguendo* that HRS §§ 353–62 and 353–64 were irreconcilable with HRS § 706–669 with regard to this issue, we would still hold that the HPA currently has the authority to set a prisoner's minimum term at a period equal to his or her maximum sentence. It is a well established principle of statutory construction that, where a general statute and a specific statute conflict, the specific statute will be favored. *See, e.g., State v. Kotis,* 91 Hawai'i 319, 330, 984 P.2d 78, 89 (1999) (quoting *State v. Vallesteros,* 84 Hawai'i 295, 303, 933 P.2d 632, 640, *reconsideration denied,* 84 Hawai'i 496,

9. The "shall be subject to parole in the manner and form as set forth" language was enacted in 1917. *See* 1917 Haw. Sess. L. Act 103, § 1 at 145. The Act stated that parole may be granted upon the completion of a prisoner's minimum sentence, less commutation, and that the "intent, plan, and purpose of parole and commutation" applied to all sentences, minimum or maximum. *Id.,* § 2 at 145. The legislative history indicates that the legislature rejected a provision that would have required a felon to serve, in the absence of a statutory minimum sentence, at least one half of his sentence before being eligible for parole. *See* Hse. Stand. Comm. Rep. No. 297, in 1917 House Journal, at 638. However, the legislative history does not address the issue presented in this case. *See id.* at 637–38; Sen. Stand. Comm. Rep. No. 243, in 1917 Senate Journal, at 726. Neither do the subsequent amendments address this issue. *See* 1931 Haw. Sess. L. Act 126, § 1 at 116; 1955 Haw. Sess. L. Act 239, § 1 at 220–21; 1988 Haw. Sess. L. Act 147, § 1 at 247; 1993 Haw. Sess. L. Act 101, § 1 at 146, Act 201, § 1 at 307.

936 P.2d 191 (1997) (citations and internal quotation signals omitted)). HRS §§ 353–62 and 353–64 are general provisions defining the authority and responsibilities of the HPA, whereas HRS § 706–669 is a specific provision regarding the establishment of minimum terms of imprisonment. Even assuming *arguendo* that HRS §§ 353–62 and 353–64 do require the HPA to give all prisoners not sentenced to life imprisonment without the possibility of parole a parole hearing, these sections would conflict with HRS § 706–669, which imposes no such requirement. In fact, HRS § 706–669(4) (1993) states that the HPA "in its discretion may, in any particular case and at any time, impose a special condition that the prisoner will not be considered for parole unless and until the prisoner has a record of continuous exemplary behavior." Thus, a prisoner upon whom such a condition has been imposed may never receive an initial parole hearing. The ICA's interpretation leaves no room for this possibility.[10] Further, the prohibition on setting minimum terms at periods equal to the applicable maximum sentences is inconsistent with the legislature's apparent intent to grant the HPA wide discretion in establishing minimum terms.

### 2. HRS Chapter 706

The ICA's opinion and the dissenting opinion also rely on the requirement in HRS § 706–670(1) (Supp.2000) that a person sentenced to an indeterminate term receive an initial parole hearing at least one month before the expiration of his or her minimum term and that, if parole is not granted at that time, the person receive additional hearings at twelve-month intervals or less, until parole is granted or the maximum sentence is

served. By virtue of the foregoing, the ICA held that a prisoner is entitled to a "reasonable period of time" between his or her minimum term and maximum sentence. ICA's opinion at 160, 34 P.3d at 1059. The dissent argues that "the HPA has no discretion to deny such additional hearings." Dissent at 201, 35 P.3d at 228. However, the legislative history of HRS § 706–670 (1993 & Supp. 2000)[11] is silent as to this issue, and, in our view, this section does not accord such a right.

■ We decline to interpret HRS § 706–670 such that its terms, which define the process for an initial parole hearing and subsequent hearings, render "eligible for parole" all persons not sentenced to life imprisonment without the possibility of parole. Under the formulation proposed by the ICA and the dissent, the HPA would be obligated to set each prisoner's minimum term such that he or she would receive at least two parole hearings. This is a significant restriction upon the HPA's otherwise broad discretion to establish minimum terms. Had the legislature intended to impose such a restriction, it presumably would have expressly done so. Further, the dissent acknowledges that "HRS § 706–670(1) does not compel the HPA to grant parole." Dissent at 202, 35 P.3d at 229. Thus, where the HPA determines at the minimum term hearing that a prisoner's case does not warrant parole, it would be forced to grant subsequent parole hearings and deny parole each time.

■ We decline to give HRS § 706–670 such a strained interpretation that is contrary to the legislature's apparent intent to confer wide discretion upon the HPA. Instead, we interpret HRS § 706–670 to have a limited application that is consistent with the

---

10. The dissenting opinion argues that this "special condition" is the only circumstance under which a prisoner may be denied parole hearings. The dissent reads too much into this provision. HRS § 706–669(4) merely allows the HPA to determine that a prisoner will not be given a parole hearing, even if he or she has served the minimum term, unless he or she exhibits "continuous exemplary behavior." Nothing in the terms of HRS § 706–669(4) imposes limitations upon the HPA's discretion in determining minimum terms.

11. HRS § 706–670 was also enacted in 1972 with the adoption of the Hawai'i Penal Code. *See* 1972 Haw. Sess. L. Act 9, § 1 at 83–84. However, the legislative history does not address the issue in the present case. *See* committee reports cited *supra* note 5. Neither do the subsequent amendments to this section address this issue. *See* 1976 Haw. Sess. L. Act 92, § 8 at 148–49; 1983 Haw. Sess. L. Act 30, § 1 at 34–35; 1984 Haw. Sess. L. Act 257, § 3 at 579–80; 1986 Haw. Sess. L. Act 314, § 47 at 614; 1988 Haw. Sess. L. Act 282, § 2 at 527; 1993 Haw. Sess. L. Act 101, § 2 at 146, Act 201, § 2 at 307–38; 1996 Haw. Sess. L. Act 4, § 1 at 445–46.

legislative intent for the HPA. Section 706–670 does not apply where the HPA has rendered the prisoner ineligible for parole, *e.g.* where the HPA has set the prisoner's minimum term at a period equal to the maximum sentence, or where the HPA has imposed the condition that he shall not be considered for parole until the prisoner exhibits exemplary behavior and he or she has not done so.

 We are mindful of our duty to give effect to all parts of a statute whenever possible. *See, e.g., In re Doe,* 90 Hawai'i 246, 250, 978 P.2d 684, 688 (1999) ("[c]ourts are bound to give effect to all parts of a statute, and that no clause, sentence, or word shall be construed as superfluous, void, or insignificant if a construction can be legitimately found which will give force to and preserve all words of the statute" (quoting *State v. Kaukimaka,* 84 Hawai'i 280, 289–90, 933 P.2d 617, 626–27, (1997) (some citations omitted))). Our interpretation of HRS § 706–670 does not run afoul of this principle. Our interpretation preserves the broad discretion of the HPA but does not render the statute superfluous, void, or insignificant; the statute still applies to all prisoners whose minimum terms, as determined by the HPA, render them eligible for parole. HRS § 706–670 still "provides for periodic review of the prisoner's case" where he or she is eligible for parole. *See* Commentary to HRS § 706–670.

 In its application for a writ of certiorari, the HPA argues that, in adopting HRS § 706–669, the legislature must have intended to allow the HPA to set minimum terms that are equal to prisoners' maximum sentence because this was also contemplated by the MPC. As noted, *supra,* the Hawai'i Penal Code was modeled after the MPC. However, the HPA admits that, under the MPC scheme, a prisoner would serve a separate term of parole after the expiration of the maximum sentence and that the HRS Chapter 706 scheme is distinguishable because it requires an unconditional discharge upon the completion of a prisoner's maximum sentence. *Compare* Model Penal Code § 6.10(1) (1962)[12] *with* HRS § 706–670(5) (1993).[13] Because the MPC parole eligibility scheme is different from that of HRS Chapter 706, the MPC is not instructive in the interpretation of HRS § 706–669.

 Based upon our review of the relevant statutes, we hold that their plain language does not prohibit the HPA from establishing a prisoner's minimum term at a period equal to his or her maximum sentence and that nothing in the legislative history supports such a restriction.[14]

**C. Policy considerations do not support judicial adoption of this limitation on the HPA's authority.**

 Absent guidance from the plain statutory language, or, if the language is ambiguous, from the legislative history, we look to the relevant policy considerations behind them. *Cf. State v. Eleneki,* 92 Hawai'i 562, 565–66, 993 P.2d 1191, 1194–95 (2000).

**12.** MPC § 6.10(1) states:

> *First Release of All Offenders on Parole.* An offender sentenced to an indefinite term of imprisonment in excess of one year under Section 6.05, 6.06, 6.07, 6.09 or 7.06 shall be released conditionally on parole at or before the expiration of the maximum of such term, in accordance with Article 305.

**13.** HRS § 706–670(5) states: "Release upon expiration of maximum term. If the authority fixes no earlier release date, a prisoner's release shall become mandatory at the expiration of the prisoner's maximum term of imprisonment."

**14.** Because it is possible to reasonably reconcile the applicable statutes based upon the plain language of the statutes, we decline to rely on extrinsic aids, such as dictionaries. *See Voellmy v. Broderick,* 91 Hawai'i 125, 129, 980 P.2d 999, 1003 (App.1999). The dissent relies primarily upon dictionary definitions of "minimum" and "maximum" to conclude that a minimum term cannot be equivalent to a maximum term. The distinction drawn by the dissent is not supported by the plain language of the relevant statutes or by the legislature's intent. The dissent acknowledges that parole is a " 'fine-tuning' of a sentencing decision." Dissent at 20 (quoting N.P. Cohen, *The Law of Probation and Parole,* § 1:19, at 1–28 (1999)). Considering the factors that the HPA considers in establishing a minimum term which cannot be considered by the sentencing court, it is certainly conceivable that there may be circumstances under which the HPA determines that a prisoner should not be eligible for parole. That being the case, there is no sound reason to categorically prohibit the HPA from setting a minimum term at a period equal to the maximum sentence.

The legislature has stated that the "dual and inseparable purposes of parole" are "the protection of society on the one hand and the rehabilitation of the offender on the other." [15] Conf. Comm. Rep. No. 32–76, in 1976 Senate Journal, at 882. The HPA is charged with the "exclusive authority to determine the minimum time which must be served before the prisoner will be eligible for parole." Commentary to HRS § 706–669. The instant case presents the question whether it is necessary to restrict the HPA's authority by prohibiting it from setting prisoners' minimum terms at periods equal to their maximum sentences.

As a policy matter, we believe that it is unnecessary to restrict the HPA's authority in this manner. HRS § 706–669 affords prisoners, *inter alia*, the following procedural protections: 1) reasonable notice of the hearing and the opportunity to be heard on the issue; HRS § 706–669(3) (1993); 2) the opportunity "to consult with any persons the prisoner reasonably desires ...”; HRS § 706–669(3)(a) (1993); 3) representation by, and the assistance of, counsel at the hearing, and the appointment of counsel if he or she cannot afford to retain one; HRS § 706–669(3)(b), (c) (1993); 4) verbatim recording of the hearing and the preservation of such recording; HRS § 706–669(6) (1993); and 5) availability of the HPA's guidelines for the uniform determination of minimum sentences; HRS § 706–669(8). Further, the HPA, in its discretion, may subsequently reduce a prisoner's minimum term. HRS § 706–669(5) (Supp.2000). The procedural protections are adequate to safeguard prisoners' rights and ensure that the HPA does not arbitrarily set minimum sentences.

In addition, in *Turner*, the ICA held that a prisoner may seek judicial review, through a HRPP Rule 40 petition, of the HPA's decision to deny parole. However,

the scope of such review is limited. The ICA noted that other jurisdictions have recognized the need to preserve the parole board's discretion in granting or denying parole:

> Declaring that "a district court cannot substitute its judgment on questions of parole for that of the parole board[,]" [*United States ex rel. O'Connor v. MacDonald*, 449 F.Supp. 291, 292 (N.D.Ill.1978) ], *the United States district court limited its review to situations where "[t]he decision of a state administrative agency is an arbitrary one when it is made without fair, solid, and substantial cause or reason; but it is not necessarily so because mistaken or even wrong." Id.* (citing *Grossmann v. Barney*, 359 S.W.2d 475, 476 (Tex.Civ. App.1962). The district court indicated *review would be exercised "to determine whether [the parole board] has followed the appropriate criteria, rational and consistent with the applicable statutes and that its decision is not arbitrary and capricious nor based on impermissible considerations." Id.* (citing *Zannino v. Arnold*, 531 F.2d 687, 690 (3d Cir.1976)).

Likewise, in *Reider v. Commonwealth of Pennsylvania Bd. of Probation and Parole*, 100 Pa.Cmwlth. 333, 514 A.2d 967 (1986), the Pennsylvania Court of Appeals held that a decision by the parole board denying parole was subject to limited judicial review. *Id.* at 972. Noting that denials of parole are "wholly a matter of the [parole board's] discretion[,]" *id.* at 970 (citing 61 Pennsylvania Consolidated Statutes § 331.21), the appellate court explained that it would be "impossible for a court to properly evaluate" a parole denial because of the many variables considered by the board, such as "record facts, personal observations and the experience of the decision maker which leads to a 'predictive judgment' as to what is best for

---

**15.** The dissenting opinion argues that these functions provide support for the proposition that a minimum term cannot be set at a period equivalent to the maximum term. We disagree. There are many factors that the HPA must consider in establishing a prisoner's minimum term, including the nature and degree of the offense, his or her criminal history, and his or her character. *See* HRS § 706–669(8). Given these factors, it is

certainly possible that the HPA, in its sound discretion, may determine that a particular case does not warrant parole because the protection of society outweighs the potential rehabilitative benefits of parole. Categorically prohibiting the HPA from setting minimum terms at periods equal to the maximum terms improperly emphasizes rehabilitation at the expense of protection.

both the inmate and the community." *Id.* at 971.

*Turner,* 93 Hawai'i at 307–08, 1 P.3d at 777–78 (emphases added) (some citations omitted) (some alterations in original). Based on similar principles, the ICA held that Hawai'i courts may review "a decision denying parole in situations where the parole board has failed to exercise any discretion at all, or 'arbitrarily and capriciously abused its discretion' so as to give rise to a due process violation or has otherwise violated any constitutional rights of the prisoner." *Id.* at 308, 1 P.3d at 778.

 As stated earlier, the determination of a prisoner's minimum term is part of the parole process. Therefore, the same standards should apply to judicial review of both an HPA decision denying parole and an HPA decision establishing a minimum term. In both cases, judicial intervention is appropriate where the HPA has failed to exercise any discretion at all, acted arbitrarily and capriciously so as to give rise to a due process violation, or otherwise violated the prisoner's constitutional rights.[16] That being the case, there are sufficient protections of prisoners' rights in the establishment of minimum terms; it is unnecessary to create judicially an additional restriction on the HPA's authority by prohibiting it from setting prisoners' minimum terms at periods equal to their maximum sentences. Where the HPA conducts a hearing pursuant to HRS § 706–669 and, based upon its established guidelines, determines that a prisoner's minimum term shall be equal to his or her maximum term, the HPA does not abuse its discretion and does not violate the prisoner's due process rights.

Finally, we note that " '[p]arole is a matter of legislative grace, and the denial of it to certain offenders is within legislative discretion.' " *State v. Kumukau,* 71 Haw. 218, 227, 787 P.2d 682, 687 (1990) (quoting *State v. Freitas,* 61 Haw. 262, 270, 602 P.2d 914, 921 (1979)). As such, it was with the legislature's discretion to allow the HPA to deny parole to certain prisoners by setting their minimum terms at periods equal to their maximum sentences. Therefore, we assume that, if the legislature had intended to limit the HPA's discretion by prohibiting it from doing so, it would have enacted an express restriction. We will not read this limitation into the statutes. If the HPA's authority to establish minimum terms is to be limited in this manner, it is incumbent upon the legislature, not the appellate courts, to do so. *Cf.* Wyo. Stat. Ann. § 7–13–201 (Michie 1999) (stating that the minimum term shall not exceed ninety percent of the maximum sentence);[17] 42 Pa. Cons.Stat. § 9756(b) (1998) (stating that the minimum term shall not exceed one-half of the maximum sentence); Nev.Rev.Stat. § 193.130(1) (2000) (stating that the mini-

---

**16.** We note the present case addresses only the issue whether the HPA has the statutory authority to set a prisoner's minimum term at a period equal to his or her maximum sentence. Williamson does not argue that, in setting his minimum term, the HPA failed to exercise any discretion at all, acted arbitrarily and capriciously resulting in a due process violation, or otherwise violated his constitutional rights.

**17.** A prior version of this statute stated:

When a convict is sentenced to the state penitentiary, otherwise than for life, for an offense or crime, the court imposing the sentence shall not fix a definite term of imprisonment, but shall establish a maximum and minimum term for which said convict shall be held in said prison. The maximum term shall not be longer than the longest term fixed by law for the punishment of the offense of which he was convicted, and *the minimum term shall not be less than the shortest term fixed by law* for the punishment of the offense of which he was convicted.

*Duffy v. State,* 730 P.2d 754, 756 (Wyo.1986) (quoting Wyo. Stat. Ann. § 7–13–201 (1977)) (emphasis added), *superceded by statute as stated in Ryan v. State,* 988 P.2d 46, 64 (Wyo.1999). In *Duffy,* the Wyoming Supreme Court stated:

[T]here is nothing in the statute which requires any fixed period of time between the minimum and maximum, and this court would be interfering with an important legislative function if it undertook to establish such a period. We doubt that the legislature overlooked the obvious possibility that a judge might impose [a sentence in which the minimum and maximum differ by one day].

*Id.* A year after *Duffy,* the Wyoming legislature responded and changed the statute into its present form, which states that the minimum can be no more than ninety percent of the maximum. *See Ryan,* 988 P.2d at 64 (citing 1987 Wyo. Sess. Laws, Ch. 157). Similarly, we decline to read a limitation on the HPA's authority to set minimum terms into the statutes and rely upon the legislature to amend the statutes if necessary.

mum term shall not exceed forty percent of the maximum sentence).[18] *But cf. Duffy,* 730 P.2d at 760 ("[j]ust one court, Michigan, has, without statutory authority, created the range to be imposed between the minimum and maximum terms" (quoting *People v. Duffy,* 67 Mich.App. 266, 240 N.W.2d 771, 773 (1976) ("any sentence which provides for a minimum exceeding two-thirds of the maximum is improper as failing to comply with the indeterminate sentence act"))).

■ Based on the foregoing, we hold that a prisoner does not have a statutory right to have his or her minimum term set at a period shorter than the maximum sentence.[19]

## III. CONCLUSION

Therefore, we reverse the ICA's opinion. We also vacate the circuit court's September 20, 1999 judgment and remand the case to the circuit court with instructions to process Williamson's petition as an HRPP Rule 40 petition.

MOON, C.J., NAKAYAMA, and RAMIL, JJ., and Dissenting Opinion of ACOBA, J., with whom LEVINSON, J., joins.

Dissenting Opinion of ACOBA, J., with whom LEVINSON, J. joins.

"When I used a word," Humpty Dumpty said in rather a scornful tone, "it means just what I choose it to mean—neither more nor less."

"The question is," said Alice, "whether you *can* make words mean so many different things."

"The question is," said Humpty Dumpty, "which is to be master—that's all."

L. Carroll, *Alice's Adventures in Wonderland and Through the Looking Glass* 169–71 (1981) (emphasis in original). In construing statutes, we are not at liberty to resort to an "Alice-in-Wonderland" lexicon. The plain meaning of terms in a statute are curbs on any felt need we may have to render statutes more palatable to our own sense of what is appropriate. In much the same way, the text of a statute establishes limits on the discretion exercised by public officials in their execution of its provisions. Were we to make words mean what we choose to make them mean, rather than give them their true meaning, we would, like Humpty Dumpty, devolve into "Jabberwocky." [1]

The plain language of Hawai'i Revised Statutes (HRS) §§ 706–660 (1993), –669 (1993 & Supp.2000), –670 (1993 & Supp.2000), 353–62 (1993), and –64 (1993) prohibits Petitioner/Respondent Appellee Hawai'i Paroling Authority (the HPA) from setting a prisoner's minimum term of imprisonment at a period equal to his or her maximum court-imposed sentence. The language of those statutes indicates that a minimum prison term is not to be set at the same length as the maximum term, although a prisoner may ultimately serve the maximum term if, in the series of parole hearings contemplated by

**18.** These states differ from Hawai'i in that the court, not the parole board, establishes the minimum sentences. Once the prisoner has completed his or her minimum term, less any deductions or commutations, the parole board considers him or her for parole. *See* Wyo. Stat. Ann. § 7–13–402(a) (1999); 61 Pa. Cons.Stat. § 331.21(a) (1999); Nev.Rev.Stat. § 193.130(1) (2000). Regardless of this difference, these statutes illustrate the principle that, if the authority to determine minimum sentences is to be limited, the proper place to do so is in a statute.

**19.** We also reject the argument of amicus curiae OPD that the policy behind indeterminate sentencing supports the ICA's holding. An indeterminate sentence is "[a] sentence to imprisonment for the maximum period defined by law, subject to termination by the parole board or other agency at any time after service of the minimum period...." Black's Law Dictionary 771 (6th

ed.1990). Williamson's sentence was subject to termination by the HPA upon completion of his minimum term. Although the HPA may have set his minimum term at a period equal to his maximum sentence, it has the discretion to reduce his minimum term. Allowing the HPA the authority to set a minimum term that is the same as a prisoner's maximum sentence does not render the sentence a determinate sentence.

**1.** *Jabberwocky* is one of Lewis Carroll's best known and most frequently discussed poems. The poem itself is full of nonsensical words, but Carroll weaves them in a way that cajoles the reader to coax a story out of what would ordinarily be nonsense. *See* R. Kelly, *Lewis Carroll* (rev. ed.1990). "Jabberwocky" has come to be defined as a "meaningless speech or writing." *Merriam Webster's Collegiate Dictionary* 624 (10th ed.1993).

HRS § 706–670, parole is denied each time. In my view, the pertinent parts of HRS §§ 706–660, –669, –670, 353–62, and –64, read together, establish that, while there is no right to parole, a minimum term must be set on the premise that every person indeterminately sentenced, like Respondent/Petitioner–Appellant Gregory K. Williamson (Williamson), is to be periodically considered for parole.

I.

"In interpreting statutes, the fundamental starting point is the language of the statute itself, and where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning." *State v. Kalama*, 94 Hawai'i 60, 64, 8 P.3d 1224, 1228 (2000) (internal quotation marks and citations omitted). Indeed, we are instructed by statute that "[t]he words of a law are generally to be understood in their most known and usual signification, without attending so much to the literal and strictly grammatical construction of the words as to their general or popular use or meaning." HRS § 1–14 (1993).

In this case, "[n]one of the parties contend and [it can]not [be] discern[ed] that the language of HRS § [§ 706–660, –669, –670, 353–62, and –64] is ambiguous inasmuch as, on its face, there is no doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression." *Kalama*, 94 Hawai'i at 64, 8 P.3d at 1228 (internal quotation marks and citation omitted). Thus, these statutes must be interpreted by "giv[ing] effect to the legislature's intent, which is obtained primarily from the language of the statute[.]" *Dines v. Pacific Ins. Co.*, 78 Hawai'i 325, 332, 893 P.2d 176, 183 (internal quotation marks, brackets, and citation omitted), *reconsideration denied*, 78 Hawai'i 474, 896 P.2d 930 (1995). Hence, "[u]nder general principles of statutory construction, courts give words their ordinary meaning unless something in the statute requires a different interpretation." *Voellmy v. Broderick*, 91 Hawai'i 125, 129, 980 P.2d 999, 1003 (App.1999) (quoting *Saranillio v. Silva*, 78 Hawai'i 1, 10, 889 P.2d 685, 694, *reconsideration denied*, 78 Hawai'i 421, 895 P.2d 172 (1995)).

We may confirm the "ordinary meaning of statutory terms" by resort to "extrinsic aids, such as dictionaries" and to our case law. *Id.* (citing *State v. Chen*, 77 Hawai'i 329, 337, 884 P.2d 392, 400 (App.), *cert. denied*, 77 Hawai'i 489, 889 P.2d 66 (1994)). The meaning of the words "shall," "minimum," and "maximum" are germane to this case. The word "shall," "[a]s used in statutes ...,, is generally imperative or mandatory" and "[t]he word in ordinary usage means 'must' and is *inconsistent with a concept of discretion.*" *Black's Law Dictionary* 1375 (6th ed.1990) (emphasis added). Thus, the word "shall" in the pertinent statutory provisions "signals ... a mandatory [statutory] provision." *State v. Hamili*, 87 Hawai'i 102, 107, 952 P.2d 390, 395 (1998) (citing *State v. Toyomura*, 80 Hawai'i 8, 21, 904 P.2d 893, 906 (1995) (parenthetical explanation omitted)). *Cf. State v. Villeza*, 85 Hawai'i 258, 266–67, 942 P.2d 522, 530–31 (1997); *State v. Cornelio*, 84 Hawai'i 476, 493, 935 P.2d 1021, 1038 (1997); *Gray v. Administrative Dir. of the Court*, 84 Hawai'i 138, 149–51 & n. 17, 931 P.2d 580, 591–93 & n. 17 (1997).

The word "minimum" is defined as "[t]he least quantity assignable, admissible[,] or possible in [a] given case *and is opposed to maximum.*" *Black's Law Dictionary* at 995 (emphasis added). "Maximum" is defined as "[t]he highest or greatest amount, quality, value or degree." *Id.* at 979.

Additionally, we are directed that "[l]aws in pari materia, or upon the same subject matter, shall be construed with reference to each other." HRS § 1–16 (1993). *See also State v. Delima*, 78 Hawai'i 343, 347–48, 893 P.2d 194, 198 (1995); *Zator v. State Farm Mut. Auto. Ins. Co.*, 69 Haw. 594, 597, 752 P.2d 1073, 1075 (1988). Thus, HRS §§ 706–660, –669, –670, 353–62, and –64 are to be read in concert. A construction of these statutes or parts of them in isolation would not reflect their true import. The failure to construe related statutes in pari materia is as unwarranted a departure from our duty to faithfully construe statutes as is the manipulation of statutory language in the face of its plain and ordinary meaning.

## II.

To say that the HPA has wide discretion is not rationally dispositive. The discretion granted the HPA to set minimum sentences is not carte blanche authority to disregard the express directives of the law. The HPA's discretion to set minimum sentences is not limitless; it is the discretion to establish such sentences, but in accordance with the legal framework prescribed by the statutes. The distinction between a maximum length of imprisonment and a minimum length of imprisonment for parole purposes is initially made in HRS § 706–660. HRS § 706–660 provides in relevant part as follows:

> **Sentence of imprisonment for class B and C felonies; ordinary terms.** A person who has been convicted of a class B or class C felony *may* be sentenced to *an indeterminate term of imprisonment* .... *When ordering such a sentence, the court shall impose the maximum length of imprisonment* which shall be as follows:
>
> (1) For a class B felony—10 years; and
>
> (2) For a class C felony—5 years.
>
> *The minimum length of imprisonment shall be determined by the Hawai'i paroling authority in accordance with section 706 669.*

(Emphases added.) That the term "shall" is used in its ordinary mandatory sense is emphasized by its juxtaposition with the term "may":

> In the past, this court has subscribed to the proposition that, "where the verbs 'shall' and 'may' are used in the same statute, especially where they are used in close juxtaposition, we infer that the legislature realized the difference in meaning and intended that the verbs used should carry with them their ordinary meanings." *In re Tax Appeal of Fasi*, 63 Haw. 624, 626–27, 634 P.2d 98, 101 (1981) (citations omitted). Not surprisingly, we have therefore construed the "close proximity of the contrasting verbs 'may' and 'shall' to require a *mandatory* effect for the term 'shall.' " *Id.* at 627, 634 P.2d at 101 (emphasis added).

*Gray*, 84 Hawai'i at 149, 931 P.2d at 591 (brackets omitted). Accordingly, in unambiguous terms, HRS § 706–660 dictates that "the court *shall* impose the *maximum* length of imprisonment" while "the *minimum* length of imprisonment *shall* be determined by [the HPA]." (Emphases added.) The common sense and only rational conclusion to be drawn from the function delegated to the court, as opposed to that given the HPA, is that the former designates the maximum sentence and the latter does not, and if the HPA in effect does so, by setting the minimum the same as the maximum sentence, it effectively violates the mandate of HRS § 706–660 and abdicates its duty thereunder. Thus, the authority of the HPA to determine the minimum sentence cannot overlap the exclusive authority expressly vested in the court to determine the maximum sentence. The express statutory command in HRS § 706–660, reserving the authority to determine the maximum sentence to the court and vesting only the determination of the minimum sentence in the HPA is consistent with and explains why there is no statutory language authorizing the HPA to set the minimum term at the same length as the maximum term, and no legislative history to that effect. The maxim of expressio unius est exclusio alterius applies. *See Black's Law Dictionary* at 581 (defining "expressio unius est exclusio alterius" as "[w]hen certain ... things are specified in a law, ... an intention to exclude all others from its operation may be inferred"); *In re Water Use Permit Applications*, 94 Hawai'i 97, 151, 9 P.3d 409, 463 (2000) (stating that "where the legislature includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that the legislature acts intentionally and purposely in the disparate inclusion or exclusion" (brackets and internal quotation marks omitted)). As stated in HRS § 706–660, the HPA must set the minimum length of sentence, in other words, a term less than, that is, "as opposed to" the maximum sentence set by the court. *Black's Law Dictionary* at 995. Construing the statutes in pari materia, the minimum sentence is to be set in accordance with HRS § 706–669.

### III.

### A.

HRS § 706–669 establishes the interrelationship between a minimum sentence order and parole:

**Procedure for determining minimum term of imprisonment.** (1) *When a person has been sentenced to an indeterminate* or an extended *term of imprisonment, the Hawai'i paroling authority shall,* as soon as practicable but no later than six months after commitment to the custody of the director of the department of public safety *hold a hearing, and on the basis of the hearing make an order fixing the minimum term of imprisonment to be served before the prisoner shall become eligible for parole.*

(2) Before holding the hearing, the authority shall obtain a complete report regarding the prisoner's life before entering the institution and a full report of the prisoner's progress in the institution. The report shall be a complete personality evaluation for the purpose of determining the prisoner's degree of propensity toward criminal activity.

(3) The prisoner shall be given reasonable notice of the hearing under subsection (1) and shall be permitted to be heard by the authority on the issue of the minimum term to be served before the prisoner becomes eligible for parole. In addition, the prisoner shall:

(a) Be permitted to consult with any persons the prisoner reasonably desires, including the prisoner's own legal counsel, in preparing for the hearing;

(b) Be permitted to be presented and assisted by counsel at the hearing;

(c) Have counsel appointed to represent and assist the prisoner if the prisoner so requests and cannot afford to retain counsel; ...

. . . .

(4) The authority in its discretion may, in any particular case and at any time, *impose a special condition that the prisoner will not be considered for parole unless* and until the prisoner has a record of continuous exemplary behavior.

(5) After sixty days notice to the prosecuting attorney, the authority in its discretion may reduce the minimum term fixed by its order pursuant to subsection (1).

. . . .

(8) *The authority shall establish guidelines for the uniform determination of minimum sentences which shall take into account both the nature and degree of the offense of the prisoner and the prisoner's criminal history and character.* The guidelines shall be public records and shall be made available to the prisoner and to the prosecuting attorney and other interested government agencies.

(Emphases added and brackets omitted.) Again, the juxtaposition of "shall" with "may" indicates the legislature intended to give mandatory effect to those directives preceded by the word "shall." *See Gray,* 84 Hawai'i at 149, 931 P.2d at 591.

HRS § 706–669 is clear and unambiguous on its face. Inasmuch as HRS § 706–669(1) mandates that the HPA "shall hold a hearing," the HPA has no discretion to dispense with the hearing. The HPA is directed "on the basis of the hearing [to] make an order fixing the minimum term of imprisonment[.]" *Id.* The procedural protections in HRS § 706–669(3)(a),(c), (6), and (8), which pertain to the hearing to fix a "*minimum* term," and the HPA's authority under HRS § 706–669(5) to reduce the "minimum term" do not in any way suggest that the HPA may impose a maximum term, but, on their face, are premised on the mandate that the HPA fixes a "minimum term," as opposed to the maximum sentence, a plain proposition supported by the other related statutes. Accordingly, a minimum term of imprisonment must be determined in light of the command to hold a hearing for that purpose. The minimum term that is fixed is "to be served *before* the prisoner shall become eligible for parole." HRS § 706–669(1) (emphasis added).

Parole is a "conditional release from imprisonment which entitles a parolee to serve *the remainder of his [or her] term* outside the confines of an institution, if he [or she] satisfactorily complies with all terms and

conditions provided in the parole order." (*Turner v. Hawai'i Paroling Auth.*, 93 Hawai'i 298, 301, 1 P.3d 768, 771 (App.2000) (quoting *Black's Law Dictionary* at 1116) (citations omitted)) (emphasis added). Parole, by definition, then, is served before a prisoner's maximum sentence ends.

Plainly, eligibility for parole must be determined before parole is granted. The minimum sentence, in turn, is to be served "before" the prisoner shall become eligible for parole. Because the minimum sentence must precede consideration for parole, and because parole can only be served before the maximum sentence runs, the minimum sentence fixed by the HPA cannot be coincident with that of the maximum sentence; *it must necessarily end before the maximum term of imprisonment set by the sentencing court is served.* The HPA, however, set the minimum at the maximum sentence term. No more patent violation of a statutory command can be imagined. "Minimum," quite obviously, "is opposed to maximum." *Black's Law Dictionary* at 995.

### B.

Setting a minimum sentence at a hearing for that purpose is, as the words "*shall* become eligible for parole" in subsection (1) indicate, the first stage of a process intended to afford a prisoner parole consideration. *See infra* and HRS §§ 706–670, 353–62, and –64. The exception to such consideration occurs when, as HRS § 706–669(4) relates, the HPA exercises its discretion to "impose a special condition that the prisoner will not be considered for parole unless and until the prisoner has a record of continuous

exemplary behavior." By expressly providing for an exception to "consider[ation] for parole," subsection (4) confirms the reciprocal and converse proposition that every other prisoner (except, obviously, those prisoners whose sentences are statutorily non-parolable, *see infra* note 2) is eligible for parole. The import of subsection (1), read in pari materia with subsection (4), is that the HPA is obligated to impose a "special condition" before suspending consideration of parole, as prescribed in HRS §§ 706–660, –669, –670, 353–62, and –64, and, in the absence of such a condition, a prisoner must "be considered for parole." HRS § 706–669(4).

Consistent with the statutory language, the commentary on HRS § 706–669 confirms that the Hawai'i Penal Code (HPC) "*does not recognize a sentence of imprisonment not subject to ... parole except for [the murder offenses referenced in HRS § ] 706–606(a)* [.]"[2] (Emphasis added.) Hence, except in the case of murder in the first degree, *see also* HRS §§ 353–62 and –64, *infra*, or an imposed special condition under HRS § 706–669(4), every prisoner is to be considered for parole.

### IV.

The setting of a minimum sentence, which takes place "as soon as practicable but no later than six months after commitment to the custody of the director of the department of public safety" discussed above, HRS § 706–669(1) (brackets omitted), is to be followed by an initial parole hearing, which occurs "at least one month before the expiration of the minimum term of imprisonment."

---

**2.** HRS § 706–606 has since been renumbered. The commentary references an earlier version of HRS § 706–606(a) which, initially and prior to the 1986 amendment, provided as follows:

> **Sentence for offense of murder.** The court shall sentence a person who has been convicted of murder to an indeterminate term of imprisonment. In such cases, the court shall impose the maximum length of imprisonment as follows:
> (a) Life imprisonment without possibility of parole in the murder of: [types of murder listed]
> . . . .

HRS § 706–606 (Supp.1972). The comparable sections presently are HRS §§ 707–701(2) (1993)

and 706–656(1) (1993). HRS § 707–701(2) provides as follows:

> **Murder in the first degree. . . .**
> (2) Murder in the first degree is a felony for which the defendant shall be sentenced to imprisonment as provided in section 706–656.

HRS § 706–656(1) provides as follows:

> **Terms of imprisonment for first and second degree murder and attempted first and second degree murder.** (1) Persons convicted of first degree murder or first degree attempted murder shall be sentenced to life imprisonment without possibility of parole. . . .

The difference in statutory language does not affect the analysis.

HRS § 706–670(1).[3] The provisions of HRS § 706–670(1), which direct periodic review of a prisoner's status for parole, verify that a minimum sentence is to be established at less than the maximum term.

HRS § 706–670(1) provides that "[a] person sentenced to an indeterminate term of imprisonment *shall* receive an initial parole hearing at least one month before the expiration of the *minimum* term of imprisonment determined by the Hawaii paroling authority pursuant to section 706–669," and that "additional hearings *shall* be held at twelve-month intervals or less until parole is granted or the *maximum* period of imprisonment expires." HRS § 706–670(1) (emphases added).[4] In view of the fact that HRS § 706–670(1) directs that an indeterminate term prisoner "*shall* receive an initial parole hearing at least one month before the expiration of the *minimum term*," (emphases added), the HPA has no discretion to deny a prisoner an "initial parole hearing." *Id. See Gray*, 84 Hawai'i at 149, 931 P.2d at 591. In the same vein, HRS § 706–670(1) compels "additional hearings [to] be held at twelve month inter-

vals or less" in the event parole is not granted in the initial parole hearing. Hence, the HPA has no discretion to deny such additional hearings. If the plain language of the statute were not enough, any doubt of Williamson's right to periodic review is dispelled by the commentary on HRS § 706–670, which notes that "[s]ubsections (1) through (3)[[5]] are *largely self-explanatory*" and "[t]he procedure [therein] *provides for periodic review of the prisoner's case*." (Emphases added.) Such provisions are consistent with the fixing of a lesser term than the maximum allowed. A contrary construction would render the provisions in HRS § 706–670 meaningless. Thus, to conclude that the mandate of periodic review is satisfied under HRS § 706–670 because it is available for persons "eligible · for parole" (*i.e.*, those whose minimum sentences have not been set at the maximum term) is circular reasoning. Eligibility for parole, as envisioned under the procedures in HRS § 706–669 and –670 is to be determined *through periodic hearings*. As the commentary on HRS § 706–670 states in pertinent part, the statute "adopt[s]

---

**3.** HRS § 706–670(1) provides in pertinent part as follows:

> **Parole procedure;** . . . (1) Parole hearing. A person sentenced to an indeterminate term of imprisonment *shall receive an initial parole hearing* at least one month before the expiration of the minimum term of imprisonment determined by the Hawaii paroling authority pursuant to section 706–669. If parole is not granted at that time, *additional hearings shall be held* at twelve-month intervals or less until parole is granted or the maximum period of imprisonment expires. . . .
>
> (Emphases added.)

**4.** The significance attributed to parole hearings is underscored by the numerous due process protections given prisoners by subsections (3) and (4) of HRS § 706–670:

> (3) Prisoner's plan and participation. *Each prisoner shall be given reasonable notice of the prisoner's parole hearing and shall prepare a parole plan, setting forth the manner of life the prisoner intends to lead if released on parole . . . . The institutional parole staff shall render reasonable aid to the prisoner in the preparation of the prisoner's plan and in securing information for submission to the authority.* In addition, the prisoner shall:
> (a) Be permitted to consult with any persons whose assistance the prisoner reasonably desires, including the prisoner's own le-

gal counsel, in preparing for a hearing before the authority;
> (b) Be permitted to be represented and assisted by counsel at the hearing;
> (c) Have counsel appointed to represent and assist the prisoner if the prisoner so requests and cannot afford to retain counsel; and
> (d) Be informed of the prisoner's rights as set forth in this subsection.
> (4) Authority's decision; initial minimum term of parole. The authority shall render its decision regarding a prisoner's release on parole within a reasonable time after the parole hearing. A grant of parole shall not be subject to acceptance by the prisoner. *If the authority denies parole after the hearing, it shall state its reasons in writing. A verbatim stenographic or mechanical record of the parole hearing shall be made and preserved in transcribed or untranscribed form. The authority, in its discretion, may order a reconsideration or rehearing of the case at any time and shall provide reasonable notice of the reconsideration or rehearing to the prosecuting attorney. If parole is granted by the authority, the authority shall set the initial minimum length of the parole term.*
>
> (Emphases added.)

**5.** *See supra* notes 3 and 4.

a procedure for parole determination.... The procedure ... provides for periodic review of the prisoner's case."

## V.

It is to be emphasized that HRS § 706–670(1) does not compel the HPA to grant parole. What it unconditionally directs, however, in the absence of an imposed condition under HRS § 706–669(4), is periodic review of an indeterminately sentenced prisoner's eligibility for parole through an initial parole hearing following the setting of a minimum term and, if necessary, additional parole hearings. Because additional hearings must be instituted "until parole is granted or the maximum period of imprisonment expires," HRS § 706–670(1), a prisoner is not guaranteed parole, and the HPA need not ultimately grant parole.

Nevertheless, as evident, HRS §§ 706–660 and –669(1) mandate that a minimum term less than the maximum term be fixed by the HPA to enable periodic review by way of the initial parole hearing and additional hearings until a prisoner is successful in obtaining parole or the maximum period of imprisonment expires. *See* HRS § 706–670(1). As Judge Foley, who authored the opinion for the Intermediate Court of Appeals (the ICA), intimates, setting the minimum term at the maximum sentence would deny a prisoner the parole consideration envisioned under the statutes. *See Williamson v. Hawai'i Paroling Auth.*, 97 Hawai'i 156, 160, 34 P.3d 1055, 1059 (Ct.App.2000) [hereinafter ICA's opinion].

That denial of parole is "within legislative discretion," majority opinion at 195, 35 P.3d at 222 (internal quotation marks and citation omitted), is not disputed, but where the legislature has expressly directed, except in the two exceptions recounted, that, "[i]n selecting individuals for parole[, the HPA shall] consider ... all committed persons," HRS § 353–62(a)(2), and set forth the procedure to be followed in rendering such consideration, those statutory commands are entitled to recognition and enforcement, as a legislative mandate that denies parole would be. In that regard, nowhere does the legislature

authorize the HPA to set the minimum sentence at the same length as that set by the court. Consequently, in setting the minimum term equal to the maximum sentence, the HPA violated the law.

## VI.

HRS § 353–62(a)(2) reiterates that the HPA "shall" "consider for parole *all* committed persons" except those committed for life without parole:

> **Hawai'i paroling authority; responsibilities and duties;** .... (a) In addition to any other responsibility or duty prescribed by law for the Hawaii paroling authority, *the paroling authority shall:*
>
> ....
>
> (2) In selecting individuals for parole, *consider for parole all committed persons, except in cases where the penalty of life imprisonment not subject to parole has been imposed, regardless of the nature of the offense committed* [.]

(Emphases added.) HRS § 353–62(a)(3) states that the HPA shall determine the appropriate time to grant parole to any "eligible individual." A sentence of life without parole is not an indeterminate sentence and does not come within the scope of HRS § 353–62. However, an indeterminately sentenced prisoner like Williamson falls within the category of "all committed persons." HRS § 353–62(a)(2). HRS § 353–62(a), consistent with the procedures established in HRS §§ 706–669 and –670, requires the HPA to consider all prisoners for parole "regardless of the nature of the offense committed[.]" HRS § 353–62(a)(2). Under HRS § 353–62, then, all committed persons, regardless of the offense for which they are committed, must be considered for parole.

But the manner in which consideration for parole is to take place or eligibility determined is not left to the unguided discretion of the parole board. HRS § 353–62(a)(2) and (3) relate to the parole board's setting of sentences and therefore must be read in concert with related statutes and not in isolation. As previously elucidated, the procedure for "consider[ing] all committed per-

sons" is governed by the provisions of HRS § 706–669, entitled *"Procedure for determining minimum term of imprisonment,"* (emphasis added), and the eligibility for release on parole by the provisions of HRS § 706–670, entitled, in part, *"Parole procedures; release on parole,"* (emphasis added). Accordingly, the concepts of "consider for parole" and "eligible" for parole as set forth in HRS § 353–62(a) can only be effectuated within the structure set forth in HRS §§ 706–669 and –670.

HRS § 353–64 confirms again that *"[a]ny committed person* confined in any state correctional facility in execution of *any sentence* imposed upon the committed person, except in cases where the penalty of life imprisonment not subject to parole has been imposed, *shall be subject to parole* in manner and form as set forth in this part[.]"* (Emphases added.) Like HRS § 353–62 discussed above, HRS § 353–64 mandates that .all prisoners except for those sentenced to life imprisonment without the possibility of parole *"shall* be subject to parole[.]"* (Emphasis added.) HRS §§ 353–62 and –64 reinforce the mandate that every prisoner must be considered for parole. Consideration for parole is governed by the procedures set forth in HRS §§ 706–660, –669, and –670 discussed previously. A HPA policy which circumvents such a mandate is illegal. Nothing grants the HPA authority or discretion to ignore this mandate.

### VII.

"[T]he plain language rule of statutory construction[ ] does not preclude an examination of sources other than the language of the statute itself[,] even when the language appears clear upon perfunctory review" to "adequately discern the underlying policy which the legislature seeks to promulgate[.]" *Bragg v. State Farm Mut. Auto. Ins. Co.,* 81 Hawai'i 302, 306, 916 P.2d 1203, 1207 (1996) (internal quotation marks, brackets, and ellipsis points omitted) (citing *Sato v. Tawata,* 79 Hawai'i 14, 17, 897 P.2d 941, 944 (1995)). In establishing the HPA, the legislature stated that

[t]he purpose of this bill is to reconstitute the board of paroles and pardons as a full-

time professional board to be known as the Hawaii Paroling Authority, in order more effectively and efficiently to achieve the dual and inseparable purposes of parole, *the protection of society on the one hand and the rehabilitation of the offender on the other.*

Sen. Conf. Comm. Rep. No. 314, in 1975 Senate Journal, at 959. In that respect, the function of parole supports the conclusion that a minimum sentence term is not to be set at the same length as the maximum term.

"The primary justification for parole is that it fosters rehabilitation. By permitting a structured, supervised, gradual return to total freedom, parole bridges the difficult transition from prisoner to ex-prisoner." N.P. Cohen, *The Law of Probation and Parole,* § 1:15, at 1–23 (1999). Parole may also serve as a prison management tool by "encouraging prisoners to obey prison rules, for the parole board is less likely to grant parole to prisoners with a poor institutional record." *Id.,* § 1:18, at 1–26. On the other hand, "a no-parole sentence ... takes away from the prisoner any motivation or incentive to become a 'model prisoner' and thereby gain parole as a reward for good behavior." *Id.* at 1–27. Parole permits "fine-tuning" of a sentencing decision. *Id.,* § 1:19, at 1–28. The proposition here is that "the parole board should be more accurate than the sentencing court in determining whether the needs of rehabilitation, special deterrence, and incapacitation have been met at any time after the sentence." *Id.*

These functions are exemplified (1) in HRS §§ 706–660 and –669, which delegate to the parole board the power to set a minimum sentence after evaluating the prisoner, *see* HRS § 706–669(2), (2) in HRS § 706–669(1), which charges that a minimum sentence is to be served before parole eligibility, (3) in HRS § 706–669(4), which suspends eligibility for parole upon an appropriate order, (4) in HRS § 706–670(1), which orders an initial parole hearing to be held at the end of the minimum sentence and additional parole hearings thereafter as necessary, and (5) in HRS §§ 353–62 and –64, which confirm that all prisoners other than those convicted of murder in the first degree are "subject to" pa-

role. Under the procedures established, periodic review is essential to the consideration of parole. Obviously, setting .a minimum term which renders such periodic review meaningless would be subject to a due process challenge. *See* discussion *infra.*

## VIII.

Therefore, every prisoner, except one subject to a statutory sentence excluding parole, is eligible for parole, *see* HRS §§ 353–62 and –64, and, thus, must be considered for parole (in the absence of a special condition under HRS § 706–669(4)) according to the procedures set forth in HRS §§ 706–660, –669, and –670. The framework of the HPC operates from the premise that parole is a critical component of post-conviction imprisonment, and the HPA has no discretion to alter those procedures by setting a minimum term at the same length as the maximum term. Thus, the framework expressly set forth in HRS §§ 706–669 and –670 *does* indeed contemplate that the HPA must (*i.e.,* "shall"), in the absence of an express condition entered pursuant to HRS § 706–669(4) or a life sentence, set an initial parole hearing and additional hearings, *see* HRS § 706–670(1), as required because, as the commentary on HRS § 706–670 contemplates, there is to be periodic review of the prisoner's case. These provisions implement the well-established purposes of parole. *See* Part VII. The abrogation of such periodic review under a "minimum equals maximum" approach eliminates altogether the balance sought to be struck by the legislature between "the protection of society on the one hand and the rehabilitation of the offender on the other." Sen. Conf. Comm. Rep. No. 314, in 1975 Senate Journal, at 959.

By expressly setting forth what the HPA may do, *i.e.,* by setting the minimum as opposed to the maximum sentence, HRS § 706–660 precludes the HPA from setting the maximum term of imprisonment. *Cf. State v. Rodgers,* 68 Haw. 438, 442, 718 P.2d 275, 277 (1986) ("[W]here a statute with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different legislative intent existed." (Ellipsis points and citations omitted.)). Obviously, if a prisoner is not susceptible to parole at the expiration of the minimum term, parole may be denied. The setting of the minimum term effectuates the penal code's adherence to the proposition that periodic review for parole, through an "initial parole hearing" and "additional hearings," HRS § 706–670(1), best serves the interests of the public and the prisoner. *See* Commentary on HRS § 706–670.

Thus, the view that periodic review is "a significant restriction," majority opinion at 192, 35 P.3d at 219, upon the HPA's discretion looms no more than irrelevant in light of the fact that the statutes discussed above circumscribe the HPA's exercise of discretion. The penal code's adoption of periodic review embodies the public policy that, in an indeterminate sentence, *i.e.,* a sentence that is "subject to termination by the parole board ... after service of the minimum period", *Black's Law Dictionary* at 771, the evaluation for parole at one point in time—the start of the defendant's sentence—is simply insufficient to assess whether a defendant should serve the maximum term allowed under the law.

## IX.

In his opening brief, Williamson made two arguments. First, he contended that the circuit court erred in treating his petition as a civil complaint and not as a petition under Hawai'i Rules of Penal Procedure (HRPP) Rule 40. Second, Williamson argued that, by virtue of HRS § 706–669(1), "[t]he HPA cannot legally set a prisoner's minimum term the same as the maximum term given by the court."

As to Williamson's first argument, the ICA held that "[a] Rule 40 petition is an appropriate means for an inmate to challenge the minimum term of imprisonment set by the HPA." ICA's opinion at 157, 34 P.3d at 1056. It is evident that Williamson's challenge to the fixing of his minimum term of imprisonment at the same length as his maximum term "seek[s] relief ... from custody based upon a judgment of conviction[ ] ... on ... any ... ground making the custody, though

not the judgment, illegal." HRPP Rule 40(a)(2).[6] "[B]ecause a denial of parole continues physical custody, such denial is a proper subject of a writ of habeas corpus and, therefore, an inmate denied parole may be entitled to relief through the mechanism of a HRPP Rule 40 petition." *Turner*, 93 Hawai'i at 307, 1 P.3d at 777. The HPA, indeed, impliedly concedes this point because it does not challenge the ICA's disposition of it.

With respect to his second argument, it is to be noted that Williamson was convicted of assault in the second degree, HRS § 707–711 (1993), and burglary in the second degree, HRS § 708–811 (1993), and sentenced by the circuit court as provided by HRS § 706–660(2) to maximum indeterminate (apparently concurrent) terms of five years of imprisonment on each count. As previously mentioned, the HPA set the minimum sentence at the same term as the maximum sentence imposed by the circuit court. The HPA did not enter, pursuant to HRS § 706–669(4), a special condition that Williamson not be considered for parole.

First, because the court erroneously dismissed Williamson's pro se petition without a hearing, it cannot be discerned whether the HPA conducted Williamson's hearing pursuant to HRS § 706–669 or complied with any "guidelines for the uniform determination of minimum sentences," as required by HRS § 706–669(8), when it set his minimum sentence at the court's maximum sentence. A failure to conduct the hearing pursuant to HRS § 706–669 or to apply guidelines that constitute a basis for uniform determination of minimum sentences may constitute a due process violation.

Second, under the statutory framework regarding parole as discussed *supra*, the maximum sentence imposed by the circuit court cannot be set by the HPA as the minimum sentence. In view of such circumstances, Williamson's petition was not "patently frivolous" or "without trace of support either in the record or from other evidence[,]" HRPP

Rule 40(f), and, therefore, should not have been dismissed by the circuit court. Rather, the action of the HPA violated express provisions of the law.

"[C]ourts may examine a decision denying parole in situations where the parole board has ... arbitrarily and capriciously abused its discretion so as to give rise to a due process violation[.]" *Turner*, 93 Hawai'i at 308, 1 P.3d at 778 (internal quotation marks omitted) (citing *United States ex rel. O'Connor v. MacDonald*, 449 F.Supp. 291, 296 (N.D.Ill.1978); *Reider v. Commonwealth, Pennsylvania Bd. of Probation & Parole*, 100 Pa.Cmwlth. 333, 514 A.2d 967, 969–70 (1986)). The action of the HPA in this case was a patent "arbitrar[y] and capricious[ ] abuse[ of] ... discretion ... giv[ing] rise to a due process violation." *Id.* (internal quotation marks and citations omitted). *See also Territory v. Lake*, 26 Haw. 764, 772 (1923) (holding that, by setting a minimum sentence at the same length as the maximum sentence, the court failed "to exercise the discretion vested in [it] and to fix a minimum sentence").

## X.

Based on the foregoing, I would affirm the ICA's holdings that (1) a HRPP Rule 40 petition is an appropriate means for an inmate to challenge the minimum prison term set by the HPA and (2) the HPA was not authorized to set Williamson's minimum term the same as his maximum term of imprisonment. I would vacate the order of the circuit court dismissing the Petition with instructions to the court to issue an order vacating the so called "minimum" sentence imposed by the HPA and directing the HPA to comply with the statutory procedures applicable to Williamson's case.

---

6. HRPP Rule 40(a)(2) states as follows:

 (2) *From Custody*. Any person may seek relief under the procedure set forth in this rule from custody based upon a judgment of conviction, on the following grounds:

 (i) that sentence was fully served;
 (ii) that parole or probation was unlawfully revoked; or
 (iii) any other ground making the custody, though not the judgment, illegal.