**Electronically Filed
Intermediate Court of Appeals
CAAP-23-0000737
23-APR-2026
08:00 AM
Dkt. 126 SO**

NO. CAAP-23-0000737

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


DONALD B. MARKS, Petitioner-Appellant, v.
STATE OF HAWAIʻI, Respondent-Appellee


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CASE NO. 1CPN-21-0000002)


<u>**SUMMARY DISPOSITION ORDER**</u>
(By: Nakasone, Chief Judge, Leonard and Hiraoka, JJ.)

Donald B. **Marks**, representing himself, appeals from the
*Findings of Fact, Conclusions of Law and **Order Denying Petition**
to Vacate, Set Aside, or Correct Judgment or to Release
Petitioner from Custody* entered by the Circuit Court of the First
Circuit.[1]  We affirm in part, vacate in part, and remand for
further proceedings.

Marks was indicted for second degree murder in 2002.
On May 19, 2004, he pleaded no contest.  The State moved for an
extended term of imprisonment.  The trial court granted the
motion and, on November 8, 2004, sentenced Marks to life in
prison without possibility of parole.  Marks did not appeal his
conviction or sentence. <u>Marks v. State</u>, No. CAAP-11-0000034,
2012 WL 1509235, at *1 (Haw. App. April 30, 2012) (SDO)
(**Marks I**), <u>cert. rejected</u>, No. SCWC-11-0000034, 2012 WL 3129027
(Haw. Aug. 1, 2012).

---

[1]      The Honorable Trish K. Morikawa presided.

Marks filed his first Hawaiʻi Rules of Penal Procedure (**HRPP**) Rule 40 petition in 2005. The circuit court denied the petition. Marks appealed. We dismissed the appeal after Marks didn't file an opening brief. Marks I, 2012 WL 1509235, at *1.

Marks filed a second HRPP Rule 40 petition in 2009. The circuit court denied the petition. Marks appealed. We affirmed. Marks I, 2012 WL 1509235, at *3. The supreme court rejected Marks's application for certiorari.

In 2014 Marks moved to withdraw his no-contest plea, and for correction of illegal sentence. Marks v. State, SCAP-16-0000337, 2018 WL 3153759, at *2 (Haw. June 28, 2018) (SDO) (**Marks II**). The circuit court treated both motions as non-conforming HRPP Rule 40 petitions; we will call them Marks's third HRPP Rule 40 petition. The court denied both motions. Marks appealed. The supreme court held that Marks's motion to withdraw no contest plea was raised and ruled on in a prior HRPP Rule 40 petition. Id.

But the supreme court held that Marks's extended term sentence was imposed in an illegal manner because a judge, not a jury, had determined that the extended term sentence was necessary to protect the public, contrary to the holding in Flubacher v. State, 142 Hawaiʻi 109, 118-19, 414 P.3d 161, 170-71 (2018). Marks II, 2018 WL 3153759, at *3. The case was remanded to the trial court on that issue only.

On remand, the trial court appointed Nelson **Goo** to represent Marks on October 25, 2019. On November 22, 2019, despite having counsel, Marks self-filed a ***First Supplement*** *to Defendant's Motion to Withdraw No Contest Plea*.

Marks and Goo both signed a *Notice of Withdrawal of Motions to Withdraw No Contest Plea and for an Order Prohibiting Enhanced/Extended Term of Imprisonment*, filed on February 19, 2020. The trial court entered a *Judgment of Conviction and Sentence* on February 19, 2020. Marks was sentenced to life with possibility of parole, with credit for time served.

On November 28, 2020, the Hawaii Paroling Authority (**HPA**) set Marks's minimum term for 40 years. HPA identified the significant factors determining the level of punishment as:

> (1) Nature of Offense (The offense was against a person and the offender displayed a callous and/or cruel disregard for the safety and welfare of others, as follows: The offender is responsible for the murder of the victim and severing the victim's head and both arms); (2) Criminal History (The person has served a prior prison term (one year or longer) for a felony level conviction, and the instant offense is for murder).

Marks filed his fourth HRPP Rule 40 petition — the subject of this appeal — on January 11, 2021. He filed an addendum on January 26, 2021. He moved several times to include additional grounds to his petition, all of which the Circuit Court accepted. He ultimately asserted twenty-four grounds for relief. The Circuit Court denied the petition without a hearing. The Order Denying Petition was entered on December 4, 2023. This appeal followed.

HRPP Rule 40(f) provides:

> If a petition alleges facts that if proven would entitle the petitioner to relief, the court shall grant a hearing which may extend only to the issues raised in the petition or answer. However, the court may deny a hearing if the petitioner's claim is patently frivolous and is without trace of support either in the record or from other evidence submitted by the petitioner.

We review the denial of an HRPP Rule 40 petition without a hearing *de novo* under the *right/wrong* standard. <u>Maddox v. State</u>, 141 Hawaiʻi 196, 202, 407 P.3d 152, 158 (2017).

Marks's opening brief does not comply with Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 28(a) or (b). To promote access to justice, we will not automatically foreclose him from appellate review. <u>Erum v. Llego</u>, 147 Hawaiʻi 368, 380-81, 465 P.3d 815, 827-28 (2020). We address what we discern to be his arguments. But we disregard the attachments to his briefs that contain argument or matters not in the record on appeal. <u>See</u> HRAP Rule 28(b)(10) ("Anything that is not part of the record shall not be appended to the brief, except as provided

3

in this Rule."); cf. Ala Moana Boat Owners' Ass'n v. State, 50 Haw. 156, 157, 434 P.2d 516, 518 (1967) (stating that former appellate rule precludes use of appendices to briefs "purely for purposes of argument").

**(1)** Ground One argued that Goo was ineffective because he didn't file an appeal from Marks's 2020 sentence for life with possibility of parole. Marks claimed to have sent a letter to Goo, dated February 24, 2020, asking to appeal his sentence. The letter stated:

> The "First Supplement to Defendant's Motion to Withdraw No Contest Plea," filed on November 22, 2019, was not part of my plea agreement with the State of Hawai'i. I only agreed to withdraw my original motion to withdraw no contest plea, filed July 1, 2019, and my motion for an order prohibiting enhanced/extended term of imprisonment, filed January 29, 2020.

Defense counsel "has a duty to pursue an appeal if a defendant in a criminal case so chooses even when counsel believes the appeal is wholly frivolous." Maddox, 141 Hawai'i at 204, 407 P.3d at 160.

But to show he was entitled to an HRPP Rule 40 hearing based on ineffective assistance of counsel, Marks "must also allege facts demonstrating that the omission resulted in either the withdrawal or substantial impairment of a potentially meritorious defense." Id. at 205, 407 P.3d at 161 (cleaned up).

Marks's self-filed First Supplement included his declaration. It stated: "This First Supplement *supplements* Defendant's pro se Motion To Withdraw Nocontest [sic] Plea Pursuant to Rule 32(d) of the Hawai'i Rules of Penal Procedure, of which was duly filed on July 1, 2019" (emphasis added). Thus, when Marks signed the February 19, 2020 *Notice of Withdrawal of Motions to Withdraw No Contest Plea and for an Order Prohibiting Enhanced/Extended Term of Imprisonment*, he also withdrew his First Supplement.

Even if it hadn't been withdrawn, the First Supplement argued only that Marks "did not voluntarily or knowingly waive his right to a jury trial." But when Marks signed his *No Contest*

*Plea*, he knowingly and voluntarily waived his right to *any trial at all*. He acknowledged:

> 5.  I know I have the right to plead not guilty and have a speedy and public trial **by jury or by the court**. I know in a trial the government is required to prove my guilt beyond a reasonable doubt. I know I can see, hear and question witnesses who testify against me, and that I can call my own witnesses to testify for me at trial. I understand I have the right to take the stand to testify and I have the right not to testify at trial. I know by pleading I give up the right to file any pre-trial motions, and **I give up the right to a trial** and may be found guilty and sentenced without a trial of any kind. I also give up the right to appeal anything that has happened in this case to date.
>
> . . . .
>
> 7.  [**XX**] I plead **no contest** because, after discussing all the evidence and receiving advice on the law from my lawyer, **I do not want to contest the charge(s) against me**.
>
> . . . .
>
> 11.  I am signing this Guilty/No Contest Plea form after I have gone over all of it with my lawyer. I know I will not be permitted to withdraw my plea. I am signing this form in the presence of my lawyer. I have no complaints about my lawyer an [sic] I am satisfied with what he/she has done for me.

(Emphasis added.)

The transcript of Marks's May 19, 2004 change-of-plea hearing shows that Marks's defense counsel at the time had moved to withdraw because "Mr. Marks, as I indicated in my declaration, he has informed me that he does not want to proceed to trial, despite what I believe to be a very viable defense to the charges." Marks then had this exchange with the trial court:

> THE COURT: . . . Just to confirm, Mr. Marks, you've seen the motion or had a chance to discuss with Mr. Breiner who's requesting to withdraw?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: And you've been able to discuss with him matters in terms of his representation of you?
>
> THE DEFENDANT: His representation has been more than effective. I have no complaints about that.

5

The trial court denied the motion to withdraw. The court then engaged Marks in a colloquy. Marks acknowledged his signature on the Change of Plea. This exchange then took place:

Q. Mr. Marks, do you understand that you have an absolute right to have a trial before a judge or a jury on this charge?

A. Absolutely.

Q. You have a right to have the State prove each and every one of these elements beyond a reasonable doubt? They must prove the charge against you beyond a reasonable doubt?

A. Yes, I'm aware of that.

Q. Do you understand that you have a right of confrontation, that you have a right to see and hear the witnesses testify against you, and to have you or your attorney cross-examine those witnesses or ask those witnesses questions?

A. I'm aware of that.

Q. Do you also understand that you have a right of compulsory process, that you have a right to have witnesses come in to testify on your behalf?

A. Yes, I do.

Q. Do you also understand that you have a right to testify on your own behalf and or you have a right to remain silent?

A. Yes, I do.

Q. And do you understand that you have a right to have a trial no matter how strong the evidence is against you?

A. Yes, Your Honor, I understand that.

Q. Do you understand that by entering a plea of no contest, you are waving or giving up all of these rights?

A. Yes, Your Honor. I'm knowingly waving those rights at this time.

Q. Do you -- you have entered a plea previously of not guilty. Do you understand that you have a right to plead not guilty and to proceed to trial on this charge?

A. I'm aware of that, Your Honor.

. . . .

Q. Do you also understand that if this case went to trial and there was an appropriate rational basis in the evidence, that there would be an option of a lesser included offense of manslaughter in this case that would be submitted

6

to the jury for their consideration; which carries with it a sentence of 20 years in prison rather life in prison with the possibility of parole, which is Murder in the Second Degree?

A.     I'm aware of that.

Q.     And you understand by pleading, you're giving up that possibility that you may be -- the jury may be presented with manslaughter as a possible verdict and you would not give up that option?

A.     I'm aware of that.

Q.     Mr. Marks, do you also understand that you have a right to have a speedy and public trial and if you plead today, you're giving up that right?

A.     Yes, Your Honor.  I'm aware of all these things.

Q.     Do you understand that if you plead no contest and the Court accepts your plea, the Court is going to find you guilty of Murder in the Second Degree and sentence you without a trial?

A.     Yes, I'm aware of that, Your Honor.

Q.     Do you understand that you cannot change your mind later and ask for a trial if you do not like the sentence that you receive from this Court?

A.     Absolutely, Your Honor.

Q.     Is there a plea agreement in this case, Mr. Marks?  Is there any agreement between you and the State as to what your sentence will be in this case?

A.     We have no plea agreement, Your Honor.

Q.     Mr. Marks, has anyone made any promises to you that you will get something in return for entering this plea?  Has anyone made any threats to you or has anyone put any pressure on you to plead no contest to this charge?

A.     No.

Q.     Have you discussed what a trial would be like in this case and have you gone over the evidence against you in this case with your attorney?

A.     Yes.

Q.     Have you discussed the police reports, witnesses, other evidence that may be admitted?

A.     Yeah.

Q.     Have you discussed possible defenses to this charge with your attorney?

A.     Yeah.

Q.     Have you discussed your plea with your attorney?

7

> A.   Yes.
>
> Q.   Are you satisfied with your attorney's advice to you?
>
> A.   Yes, more than satisfied.
>
> Q.   Have you completely understood the proceedings this morning?
>
> A.   Fully.
>
> Q.   Do you have any questions?
>
> A.   None.

On this record, we conclude Marks has not demonstrated that Goo's alleged failure to follow Marks's request to appeal his February 19, 2020 sentence "resulted in either the withdrawal or substantial impairment of a potentially meritorious defense." Maddox, 141 Hawaiʻi at 205, 407 P.3d at 161.

Marks did not directly appeal his original sentence. He did not raise the jury trial waiver issue in his first, second, or third HRPP Rule 40 petitions. In Marks's appeal from the denial of his third petition (which resulted from his motion to withdraw his no contest plea), the supreme court held that Marks's motion to withdraw his no contest plea was raised and ruled upon in a prior HRPP Rule 40 petition. Marks II, 2018 WL 3153759, at *2. We conclude the issue is waived, and Marks did not rebut the presumption that his failure to raise it earlier was a knowing and understanding failure. HRPP Rule 40(a)(3).

Ground One was patently frivolous and without trace of support in the record. The Circuit Court was right to deny it without a hearing.

**(2)**   Ground Two argued that Marks "did not voluntarily, knowingly, or intelligently waive his right to a jury trial" because of "mental disorders" that the trial court "ignored in her colloquy with Marks."

During the May 19, 2004 change-of-plea hearing Marks was asked if his mind was clear. He answered, "Crystal clear, Your Honor."

Marks moved for a mental examination on June 1, 2004. The trial court denied the motion "because there is no rational basis to appoint examiners to determine if [Marks] is fit to proceed." Marks did not appeal. He did not raise the issue by direct appeal or in his previous HRPP Rule 40 petitions. We conclude the issue is waived, and Marks did not rebut the presumption that his failure to raise it earlier was a knowing and understanding failure.

The Circuit Court was right to deny Ground Two without a hearing.

**(3)** Ground Three argued that HPA didn't conduct Marks's Hawaii Revised Statutes (**HRS**) § 706-669 minimum term hearing within the statutory deadline. "When a[n HPA] hearing is merely delayed, it is unclear what purpose a remedy could serve where a proper hearing is eventually held and no prejudice results." Coulter v. State, 116 Hawaiʻi 181, 186, 172 P.3d 493, 498 (2007) (discussing Monalim v. State, 89 Hawaiʻi 474, 974 P.2d 1064 (App. 1998)). Marks argues HPA's delay deprived it of jurisdiction to set his minimum term, but that would mean he'd never become eligible to seek parole. He does not otherwise argue he was prejudiced by the delay. Ground Three was patently frivolous and without trace of support in the record. The Circuit Court was right to deny it without a hearing.

**(4)** Ground Four argued that HRS §§ 706-656 and -669 are "overly broad and unconstitutionally vague in their omission to define what would qualify or be within the scope of a 'minimum length of imprisonment' that 'shall' be determined, or to provide standards to govern the actions of the HPA in the setting of the minimum term[.]"

HRS § 706-656(2) (2014) requires that HPA determine the minimum length of imprisonment for those convicted of second degree murder and sentenced to life with possibility of parole. HRS § 706-669(8) (2014) requires that HPA "establish guidelines for the uniform determination of minimum sentences which shall take into account both the nature and degree of the offense of the prisoner and the prisoner's criminal history and character."

9

Hawaii Administrative Rules (**HAR**) § 23-700-23 establishes factors the HPA must consider in fixing a minimum term.  HAR § 23-700-24 lists mitigating factors, and HAR § 23-700-25 lists aggravating factors.  HAR §§ 23-700-26 through -29 establish procedures and guidelines for reducing minimum terms.  The HPA's order appropriately identified factors from HAR §§ 23-700-23 and -25 it considered in determining Marks's minimum term.

Ground Four was patently frivolous and without trace of support in the record.  The Circuit Court was right to deny it without a hearing.

**(5)**  Ground Five argued that HRS § 706-669(8) "aggravates penalty for the offense beyond what was solely authorized by the verdict of the trier of fact alone, and leaving the guidelines procedurally inadequate to provide a uniform sentence."

Marks appears to argue that the HPA set his minimum term because he severed his victim's head and arms, even though he was never charged with abuse of a corpse and the statute of limitations on that offense had expired.  But the HPA can consider that conduct under HAR §§ 23-700-23 and -25 when setting a minimum term.

Marks also argues he was treated differently than others similarly situated, in violation of the guidelines that require a "uniform" process.  He supplemented his petition on April 12, 2022 to provide examples of other second degree murder cases.  None of the examples were documented with the charging documents or HPA minimum term orders from the other cases.  At any rate, HRS § 706-669(8) requires HPA to "establish guidelines for the uniform determination of minimum sentences which shall take into account both the nature and degree of the offense of the prisoner and the prisoner's criminal history and character."  The statute does not require that HPA impose identical minimum terms for all second degree murder convictions.  HPA followed HAR §§ 23-700-23 and -25 when setting Marks's minimum term.  Those were the "guidelines for the uniform determination" of minimum terms.

Ground Five was patently frivolous and without trace of support either in the record or from other evidence submitted to the Circuit Court. The Circuit Court was right to deny it without a hearing.

**(6)** Ground Six argued the "felony sentencing procedures are unconstitutional violating the seperation [sic] of powers[.]" The supreme court has rejected this argument. State v. Bernades, 71 Haw. 485, 490, 795 P.2d 842, 845 (1990). Ground Six was patently frivolous and without trace of support in the record. The Circuit Court was right to deny it without a hearing.

**(7)** Ground Seven argued that "HPA violated [Marks]'s Due Process by holding Minimum Term Hearing with ONLY two (2) Members" in violation of HAR § 23-700-2(b). HAR § 23-700-2 provides: "Formal decisions of the Authority shall not be conclusive and final unless at least two members are in agreement." See De La Garza v. State, 129 Hawaiʻi 429, 433 n.10, 302 P.3d 697, 701 n.10 (2013). Two members agreed to Marks's minimum term. Nothing in HAR § 23-700-2 requires all three members of the authority to attend a hearing.

Ground Seven argued that Marks was not informed of his rights under the law, as required by HAR § 23-700-22(d). Those rights were to consult with counsel to prepare for the hearing, to be represented by counsel at the hearing, and to have counsel appointed if the prisoner so requests and cannot afford to retain counsel. HRS § 706-669(3)(d). Marks consulted with Goo before his hearing. Goo appeared with Marks during the hearing. The argument was patently frivolous and without trace of support in the record.

But Ground Seven also argued that Marks was not provided with any information HPA considered to set his minimum term, or "given the opportunity to challenge or to controvert and argue against any inaccurate information used by the HPA in the setting of his Minimum Sentence[.]"

11

In response, the attorney general argued for the State that Marks did not

> object or ask to continue his minimum hearing because he allegedly could not consult with his attorney prior or because he was allegedly not given adverse information considered by the HPA in setting his minimum term. Nor does [Marks] identify any alleged adverse information considered by the HPA in setting his minimum term which he was not given prior to the hearing, or any alleged inaccurate information used which he was not able to contest.

The State did not "file with its answer any records that are material to the questions raised in the petition which are not included in the petition." HRPP Rule 40(d). The record does not reflect what information was in HPA's file on Marks or what information HPA provided to Marks before his hearing. There was insufficient information in the record for the Circuit Court to determine whether Marks's claim that HPA failed to provide him with adverse information was patently frivolous. Kwolek v. State, No. CAAP-21-0000134, 2023 WL 6632841, at *4 (Haw. App. Oct. 12, 2023) (SDO).

Under these circumstances, we conclude that Ground Seven presented "a colorable claim for post-conviction relief such that a Rule 40 hearing was required." Maddox, 141 Hawaiʻi at 202, 407 P.3d at 158. The Circuit Court erred by denying Ground Seven without a hearing to determine whether Marks was provided with the information in his HPA file and given the opportunity to challenge or controvert and argue against any allegedly inaccurate information considered by HPA in setting his minimum term.

**(8)** Ground Eight argued that HPA deprived Marks of constitutional rights without due process by "narrowing" his "sentencing range." The minimum term set by HPA is not a sentence. Keawe v. State, 79 Hawaiʻi 281, 289, 901 P.2d 481, 489 (1995); cf. Williamson v. Hawaiʻi Paroling Auth., 97 Hawaiʻi 183, 196, 35 P.3d 210, 223 (2001) (holding that "a prisoner does not have a statutory right to have his or her minimum term set at a period shorter than the maximum sentence"). Ground Eight was patently frivolous and without trace of support in the record. The Circuit Court was right to deny it without a hearing.

**(9)** Ground Nine argued that HPA's guidelines "impose a higher sentencing floor than would be given under the statutory mandatory minimum." The "minimum length of imprisonment" for defendants sentenced to life imprisonment with possibility of parole for second degree murder "shall be determined by the Hawaii paroling authority[.]" HRS § 706-656(2) (2014). There is no right to a minimum term shorter than the maximum sentence. Williamson, 97 Hawaiʻi at 196, 35 P.3d at 223. Ground Nine was patently frivolous and without trace of support in the record. The Circuit Court was right to deny it without a hearing.

**(10)** Ground Ten argued that HPA violated HRS § 706-609 (2014), which states: "When a conviction or sentence is set aside on direct or collateral attack, the court shall not impose a new sentence for the same offense, or for a different offense based on the same conduct, which is more severe than the prior sentence." The statute applies to courts, not the HPA. Ground Ten was patently frivolous and without trace of support in the record. The Circuit Court was right to deny it without a hearing.

**(11)** Ground Eleven argued that Goo provided ineffective assistance during the HPA minimum term hearing by failing to object to HPA using documents or asking Marks questions about his cutting off his victim's head and arms.

We review a claim of ineffective assistance of counsel by looking at whether defense counsel's assistance was within the range of competence demanded of attorneys in criminal cases. State v. DeLeon, 131 Hawaiʻi 463, 478, 319 P.3d 382, 397 (2014). Here, HPA's inquiry into Marks cutting off his victim's head and arms was relevant to setting his minimum term under HAR §§ 23-700-23 and -25. Goo was not ineffective because he didn't object to HPA's legitimate inquiry.

But Ground Eleven also argued, similar to Ground Seven, that Marks asked Goo to postpone the hearing until Marks "had a chance to review all the adverse materials in the HPA's possession[.]" According to Marks, Goo did not ask for a continuance or send him "the adverse information held by the HPA[.]" These allegations presented "a colorable claim for

post-conviction relief such that a Rule 40 hearing was required" on Marks's claim of ineffective assistance of counsel. Maddox, 141 Hawaiʻi at 202, 407 P.3d at 158.

The record does not reflect that Marks served Goo with a copy of the January 26, 2021 *Rule 40 Addendum*, as required by HRPP Rule 40(f) for ineffective assistance of counsel claims. See Kwolek, 2023 WL 6632841, at *5. If Marks maintains his ineffective assistance of counsel claim on remand, he must serve Goo with a copy of the January 26, 2021 Rule 40 Addendum.

**(12)** Ground Twelve reargued grounds we held above to be patently frivolous and without trace of support in the record. The Circuit Court was right to deny it without a hearing.

**(13)** Ground Thirteen argued that HRS § 706-669 required HPA "to obtain Marks's Presentence Investigation Report (PSI)" from the circuit court adult client services branch. The statute requires that HPA "obtain a complete report regarding the prisoner's life before entering the institution and a full report of the prisoner's progress in the institution. The report shall be a complete personality evaluation for the purpose of determining the prisoner's degree of propensity toward criminal activity." It does not require that HPA request or obtain a PSI.

Ground Thirteen also argued that Goo was ineffective because he "did not privately confer with or discuss with Marks his rights at this [minimum term] hearing" and failed to object when an HPA member questioned Marks about cutting off his victim's head and arms. The latter argument was discussed in Ground Eleven; Goo was not ineffective for not objecting to HPA's legitimate inquiry. The former argument presented "a colorable claim for post-conviction relief such that a Rule 40 hearing was required" on Marks's claim of ineffective assistance of counsel. Maddox, 141 Hawaiʻi at 202, 407 P.3d at 158.

Again, the record does not reflect that Marks served Goo with a copy of the February 9, 2021 *Motion to Add Additional Grounds to HRPP Rule 40 Petition for Post-Conviction Relief*, as required by HRPP Rule 40(f). If Marks maintains his ineffective

14

assistance of counsel claim on remand, he must also serve Goo with a copy of the February 9, 2021 motion.

**(14)** Ground Fourteen argued the HPA minimum term is a "sentence."  It is not.  <u>Keawe</u>, 79 Hawaiʻi at 289, 901 P.2d at 489.  Ground Fourteen is patently frivolous and without trace of support in the record.  The Circuit Court was right to deny it without a hearing.

**(15)** Ground Fifteen argued that HPA abused its discretion by considering Marks's cutting off his victim's head and arms when imposing his minimum term.  HPA could consider that conduct under HAR §§ 23-700-23 and -25.  Ground Fifteen was patently frivolous and without trace of support in the record. The Circuit Court was right to deny it without a hearing.

**(16)** Ground Sixteen argued that HPA imposed a mandatory minimum sentence in violation of <u>Alleyne v. United States</u>, 570 U.S. 99 (2013).  "The requirement in <u>Alleyne</u>, that facts which increase mandatory minimum sentences be found by a jury beyond a reasonable doubt, does not apply to HPA minimum term hearings." <u>Star v. State</u>, No. CAAP-17-0000642, 2018 WL 4327325, at *2 (Haw. App. Sept. 11, 2018) (SDO).  Ground Sixteen was patently frivolous and without trace of support in the record.  The Circuit Court was right to deny it without a hearing.

**(17)** Ground Seventeen argued that HPA violated <u>State v. Modica</u>, 58 Haw. 249, 567 P.2d 420 (1977).  <u>Modica</u> applies to sentencing by a trial court; it does not apply to HPA minimum term determinations.  <u>Cf.</u> <u>Williamson</u>, 97 Hawaiʻi at 196, 35 P.3d at 223.  Ground Seventeen was patently frivolous and without trace of support in the record.  The Circuit Court was right to deny it without a hearing.

**(18)** Ground Eighteen argued that the legislature's delegation of authority to HPA to set minimum terms is unconstitutional under <u>Alleyne</u>.  It was not.  <u>Star</u>, 2018 WL 4327325, at *2.  Ground Eighteen was patently frivolous and without trace of support in the record.  The Circuit Court was right to deny it without a hearing.

15

**(19)** Ground Nineteen argued that HPA must orally pronounce the minimum term before closing the hearing under HRS § 706-669. Nothing in HRS § 706-669 requires that HPA announce its decision during the minimum term hearing. Ground Nineteen was patently frivolous and without trace of support in the record. The Circuit Court was right to deny it without a hearing.

**(20)** Ground Twenty argued that HPA could not consider Marks's cutting off his victim's head and arms because he was never charged or convicted of abuse of a corpse under HRS § 711-1108. HPA can consider that conduct under HAR §§ 23-700-23 and -25. Ground Twenty was patently frivolous and without trace of support in the record. The Circuit Court was right to deny it without a hearing.

**(21)** Ground Twenty-one argued that the State breached a "Plea Agreement" by failing to inform HPA it was not to "impose an extended term of imprisonment, which clearly a 'Level III,' level of punishment is." The agreement to which Marks referred was the State's 2020 agreement to withdraw its motion for an extended term of imprisonment and recommend a sentence of life with possibility of parole. The State withdrew its motion for extended term. Marks was resentenced to life with possibility of parole. HPA could have set Marks's minimum term at life. Williamson, 97 Hawaiʻi at 196, 35 P.3d at 223. Ground Twenty-one was patently frivolous and without trace of support in the record. The Circuit Court was right to deny it without a hearing.

**(22)** Ground Twenty-two argued that HPA punished Marks twice for the same offense. Marks seems to argue that his 2004 judgment of conviction and sentence to life without possibility of parole mentioned a mandatory minimum of ten years as a repeat offender, but after he was resentenced in 2020 to life with possibility of parole, HPA "sentenced" him to a minimum term of forty years as a repeat offender. That, he argues, was a multiple punishment for being a repeat offender.

The 2004 judgment mentioned a mandatory minimum term because HRS § 706-656 (Supp. 2003) provided:

> If the court imposes a sentence of life imprisonment without possibility of parole pursuant to section 706-657 [("Enhanced sentence for second degree murder")], as part of that sentence, the court shall order the director of public safety and the Hawaii paroling authority to prepare an application for the governor to commute the sentence to life imprisonment with parole at the end of twenty years of imprisonment; provided that persons who are repeat offenders under section 706-606.5 [("Sentencing of repeat offenders")] shall serve at least the applicable mandatory minimum term of imprisonment.

The HRS § 706-606.5(1)(a) (Supp. 2003) mandatory minimum term for a person convicted of second degree murder with one prior felony conviction was ten years.

The 2020 judgment of conviction resentenced Marks to life with possibility of parole. No mandatory minimum was stated because HRS § 706-656(2) (2014) provided, in relevant part:

> persons convicted of second degree murder . . . shall be sentenced to life imprisonment with possibility of parole. The minimum length of imprisonment shall be determined by the Hawaii paroling authority; provided that persons who are repeat offenders under section 706-606.5 shall serve **at least** the applicable mandatory minimum term of imprisonment.

(Emphasis added.)

The HRS § 706-606.5(1)(a) (2014) mandatory minimum for a person convicted of second degree murder with one prior felony conviction was ten years. HPA ordered a minimum term of forty years based in part on Marks's history of a felony conviction. That was not a "sentence." Keawe, 79 Hawaiʻi at 289, 901 P.2d at 489. HPA could have set Marks's minimum term at life. Williamson, 97 Hawaiʻi at 196, 35 P.3d at 223. Ground Twenty-two was patently frivolous and without trace of support in the record. The Circuit Court was right to deny it without a hearing.

**(23)** Ground Twenty-three argued the HPA members lacked legal qualifications to impose sentence because they don't "possess a Jurisprudence Law Degree." HPA does not impose

17

sentence. <u>Keawe</u>, 79 Hawaiʻi at 289, 901 P.2d at 489. No law requires an HPA member to be a lawyer. Ground Twenty-three was patently frivolous and without trace of support in the record. The Circuit Court was right to deny it without a hearing.

**(24)** Ground Twenty-four argues there is "systemic racism" and in the HPA that discriminates against Caucasians. The supreme court has held that HRS § 706-669 affords procedural protections that are "adequate to safeguard prisoners' rights and ensure that the HPA does not arbitrarily set minimum sentences." <u>Williamson</u>, 97 Hawaiʻi at 194, 35 P.3d at 221. Ground Twenty-four was patently frivolous and without trace of support in the record. The Circuit Court was right to deny it without a hearing.

## CONCLUSION

The December 4, 2023 *Findings of Fact, Conclusions of Law and Order Denying Petition to Vacate, Set Aside, or Correct Judgment or to Release Petitioner from Custody* is affirmed as to the denial without a hearing of Grounds 1-6, 8-10, 12, and 14-24. We partially vacate the denial without a hearing of Grounds 7, 11, and 13, and remand for a hearing on Marks's contentions that: (1) he was not provided with the information HPA considered to set his minimum term, or given the opportunity to challenge inaccurate information used by the HPA to set his minimum term; (2) Goo's representation was ineffective because he did not follow up on Marks's request to postpone the HPA minimum term hearing or send Marks adverse information in his HPA file; and (3) Goo's representation was ineffective because he "did not privately confer with or discuss with Marks his rights at this [minimum term] hearing."

If Marks maintains his ineffective assistance of counsel claims on remand, he must serve Goo with his January 26, 2021 *Rule 40 Addendum* and February 9, 2021 *Motion to Add Additional Grounds to HRPP Rule 40 Petition for Post-Conviction Relief*, as required by HRPP Rule 40(f).

18

Marks's March 11, 2024 *Motion for Appointment of Effective Appellate Counsel* (JIMS dkt. 24) and March 20, 2025 *Motion for Appointment of Effective Appellate Counsel* (JIMS dkt. 91) are denied.

Marks's September 2, 2025 *Motion for Order of No Oral Argument* (JIMS dkt. 105) is denied as moot.

DATED: Honolulu, Hawai'i, April 23, 2026.

On the briefs:

Donald B. Marks,
self-represented
Petitioner-Appellant.

Lisa M. Itomura,
Deputy Attorney General,
State of Hawai'i,
for Respondent-Appellee.

/s/ Karen T. Nakasone
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Keith K. Hiraoka
Associate Judge